STATE OF IOWA, Appellee, v. OLIVER BRICKER, Appellant.

BURGLARY: Evidence—Weight and Sufficiency—Recent Possession. Recent possession, *alone,* of property stolen by someone by means of a burglary, does not justify an instruction that the jury would be warranted in convicting the possessor of the burglary "unless the facts and circumstances shown by the evidence raise a reasonable doubt as to whether the possessor did not come *honestly* into such possession."

CRIMINAL LAW: Evidence—Weight and Sufficiency. Principle recognized that circumstances, in order to justify a conviction for crime, must not only be consistent with guilt, but inconsistent with any other rational theory. Applies where the State was contending that recent possession of property obtained by means of a burglary was sufficient to sustain a verdict of guilt of burglary.

BURGLARY: Evidence—Sufficiency—Recent Possession. Recent possession of property obtained by means of a burglary is, of itself, wholly insufficient to sustain a conviction for burglary, when such possession is consistent with innocence of burglary.

*Appeal from Hamilton District Court.*—H. E. FRY, Judge.

WEDNESDAY, NOVEMBER 15, 1916.

DEFENDANT was indicted for breaking and entering with intent to commit larceny, tried to a jury, and convicted. He appeals.—*Reversed.*

*J. W. Lee* and *G. D. Thompson,* for appellant.

*George Cosson,* Attorney General; *John Fletcher,* Assistant Attorney General; *J. E. Burnstedt* and *Robert Healy,* for appellee.

GAYNOR, J.—It is alleged in the indictment that, on or about the 3d day of July, 1915, the defendant burglariously broke and entered a certain dwelling house in the possession and under the control of one John Baker; that he did this with the unlawful and felonious intent to commit the crime of larceny. To the indictment, the defendant entered a plea of not guilty, was tried to a jury, convicted and sentenced to the penitentiary at Ft. Madison. From this judgment of conviction he appeals.

The evidence in this case is circumstantial. There is no direct evidence that the defendant committed the crime charged against him. The evidence discloses that John Baker, referred to in the indictment, is a farmer, and occupied the house alleged to have been burglarized; that, about 10 o'clock on the morning of the 3d day of July, 1915, he, with his family, left the home and went to the town of Dayton to attend a celebration. The house was left securely locked. All the doors were securely fastened, except one, and this was secured by a chair placed on the inside. All the windows were securely locked, except one, which opened in the pantry. This was covered by a screen. A wire screening was tacked over it. Between 4 and 5 o'clock, certain men working in a field near by discovered this house to be on fire. They

hastened to the house. The fire was then on the northeast corner of the roof. They found the house closed and locked.

Beck, one of the parties who discovered the fire and came to the building, testified:

"I tried the east door on the porch and could not break the lock. Then we went around the house and broke the lock of the west door that went into the kitchen. There were no doors open when I got there."

He says there was a bull dog on the porch. The evidence shows that this dog fought these parties off at first, and had to be silenced with a brick or something before the building could be entered. The door locked with a chair was intact, and the chair was removed and the door opened by the persons who broke into the building. There is no evidence that the screen was removed from the pantry window.

Walker, one of the parties that first arrived, testified that there were three outside doors; that they tried all of them before they broke in; that everything was shut up tight. He testified:

"The dog was there. The dog tried to do a whole lot, but we didn't let him. The men knocked him down with a tile. Not long after we got there, there were others around the house, and someone broke the south window in. It was a bay window. The people were all around the house. They came in through all the doors. There were three or four helping in the front room that I knew of. The others were all over the house. I don't know where. I didn't pay particular attention to what they were doing. Everybody was busy getting the things out of the house. There was plenty to take care of them when we got to the porch. The people kept coming after the house was burned to the ground."

Beck further testified:

"After we arrived from the field, others began to arrive. They all ran into the house and helped to carry things out. There was quite a bit of excitement. I didn't care where I put things, so I got them out. Everybody was in a hurry.

We put the bedding in bunches away from the fire. Four or five of us did most of the work carrying out. I didn't know all the people that were there; I knew most of them. I didn't know what they did in the house. When we got through, the goods were scattered all around in different places. We then picked up the furniture and bedding and things and put them in a hayrack. We put the wearing apparel in there too. We just threw them in loose. We didn't stop to take notice of what was there or what was not. We just proceeded to get things out—whatever was in sight."

John Baker testified:

"We didn't return to the house until about 7 o'clock in the evening. When we returned, there was quite a lot of neighbors there. Our household goods were in a double corncrib in a hayrack. The house was burned to the ground."

Of all the parties who attended the burning of the building and assisted in rescuing the property from the building, Beck and Walker were the only two called. Defendant introduced no evidence.

Two witnesses testified that, a little after 1 o'clock of the day on which the house was burned, they saw a man in the neighborhood of the house, and think that the man was the defendant. They were, however, unable to identify the man seen by them as the defendant, with any degree of certainty. The distance was such that they were unable to see his face or recognize with certainty that the person seen was the defendant. The identification is very unsatisfactory. However, we may let that pass for what it is worth. This testimony is a two-edged sword—hurts as well as helps the State's contention, if true. This ends the first chapter.

On the 14th day of November, 1915, the defendant was injured in the head by being shot. He was discovered in this condition and taken to his brother's home. Whether the shooting was accidental or not does not appear. The shooting was done in the woods where people were hunting squirrels. He claimed to have been shot by one Lloyd Richey.

He was discovered by one Baldridge and one Fry. They, too, were hunting squirrels at the time. Fry and Baldridge carried the defendant to his brother's home. Baldridge testifies that he helped take care of him after his brother came; asked him where he left the satchel; and the defendant said, "I left it up on the hill." Baldridge then went to the hill and found the satchel and a sack or pillow case, and brought them to the house where defendant was confined. The sack was about 95 feet from the satchel. The sack was covered with blood. When the pillow case and sack were brought to the defendant, he claimed to be the owner of them. The sack contained certain articles, pillow slips, table cloths, and other articles, which the Bakers claim were in the house at the time they left, on the morning of the day that the fire occurred. Some of the articles claimed to have been found in defendant's possession on the 14th of November were left by the Bakers in the upstairs rooms at the time they left. At least, so it is claimed by them.

There is no evidence that the upstairs rooms were not visited by some of the parties who attended to rescuing the furniture and goods from the house. There is some evidence from some of the parties that they did not observe anybody going upstairs. There is evidence of one witness that he opened the upstairs door and found the place full of smoke, and closed the door again. It does not appear, though, at what time this happened, whether at the beginning or towards the completion of the work of rescuing the property. The inference that the State draws from this record is that some of the goods found in the possession of the defendant belonging to the Bakers were in an upstairs room at the time the fire occurred; that no one of the rescuers visited the upstairs; that some of the property in the possession of the defendant must, therefore, have been removed from the building before the fire occurred; that the defendant must have removed it by breaking and entering, because it was found in his possession on November 14th.

Upon this record and contention, it was found by the jury that, on the 3d day of July, 1915, the defendant did wilfully, unlawfully, feloniously and burglariously break and enter this dwelling house with intent to commit a public offense, to wit, larceny.

1. BURGLARY: evidence: weight and sufficiency: recent possession.

The defendant's contention is: First, that the evidence is wholly insufficient to justify this finding; second, that the court erred in its instructions to the jury.

The other errors assigned are involved in these two. We will consider these in the reverse order of the assignment. Did the court err in its instructions to the jury? The instructions complained of are numbered by the court, and the eighth and ninth are challenged. The eighth instruction reads as follows:

"If it appears from the evidence that some person or persons did actually break and enter the dwelling house in question and take goods, clothing or household articles therefrom, you should take into consideration what goods, clothing or articles were taken from such dwelling, where the same were found, what, if anything, the defendant said with reference to his connection therewith, and all other matters shown in the evidence and bearing thereon. In this connection you are told that if you find from the evidence beyond a reasonable doubt that some person stole from the dwelling house in question the clothing or articles or some of them introduced in evidence in this case, by breaking and entering said building with intent to steal the same, and you further find beyond a reasonable doubt that recently thereafter such property thus stolen, if any, was found in the possession of the defendant, then, in such case, you would be warranted in concluding that the defendant stole the property, if any, thus found in his possession, by breaking and entering said building with intent to steal such property, unless the facts and circumstances shown by the evidence raise in your minds a reasonable doubt as to whether he *did not come honestly into such possession.*

But if the facts and circumstances do raise such reasonable doubt, then you would not be warranted in drawing such conclusion from such recent possession, if established."

This instruction standing alone does not express the true rule, and was very prejudicial to defendant's rights, in view of the record here made. It will be noticed, from a reading of this instruction, that the court said to the jury that, if some person stole from this building the articles ·found in the possession of the defendant, and if the stealing was accomplished by breaking and entering the building, and if, recently thereafter, some of the property so stolen was found in the possession of the defendant, the jury would· be warranted in concluding that the defendant stole the property thus found in his possession, by breaking and entering the building with intent to steal, *"unless the facts and circumstances shown by the evidence raise in your minds a reasonable doubt as to whether he did not come honestly into such possession."* It must be borne in mind that this record discloses, if the State's evidence is to be relied upon, that, after the fire was discovered, parties came to the house, broke into the house in large numbers, removed from the building all the property that could be removed, placed it in the yard outside the building as rapidly as removed, care being taken only to see that it was placed where the fire would not reach it; that there was no distinction evidenced as to what portion of the building was visited by these different parties, and no positive evidence as to what goods were removed from the building; that, but a few hours before this occurred, the defendant was seen in the neighborhood of the house. Whether he was there at the time the goods were being removed, or after they were removed, does not appear. There is nothing to show who the people were who visited the house and had. access to this property and aided in removing it, except the two witnesses who were called .for the State. There is no direct evidence that the building was broken and entered after the Bakers left, and before these rescuing parties' arrived.

There is no direct evidence that anybody broke or entered this house before the arrival of the rescuing party. Under this instruction, the jury might have found that, inasmuch as the defendant was seen in this neighborhood a short time before the fire, he may have been present among the large concourse of people who came to the rescue; that he wrongfully possessed himself of some of the property at that time. This inference would be as well founded as that he broke and entered to secure the property. It would be inferable, if inferable at all, from the fact that he had some of the property in his possession on the 14th of November. The inference would be just as direct and certain to the effect that he stole this property after it had been removed from the house as that he broke and entered and stole it in that way. We may assume that this property was in the house before the fire. Whether this property was removed from the house during the fire does not positively appear. The jury may have found that it was; that someone wrongfully possessed himself of it—the defendant or someone from whom the defendant received it. In either event, he would not have come by the possession of it honestly, and in this lies the error of the instruction. The possession was made presumptive evidence not only of the larceny, but of the breaking and entering as well, "unless the facts and circumstances raise a reasonable doubt as to whether or not he came into possession honestly." If he came into possession of the property by larceny of the property after it had been removed from the building, or if he came into possession of it from one who had feloniously taken the property after it had been removed from the building, the possession could not be honestly acquired, and yet that possession would not tend to establish the crime charged, to wit, that he broke and entered the building.

In the ninth instruction, the court stated the correct rule, in which he said to the jury that possession of the goods stolen does not, in itself, create a presumption, or amount to prima-facie proof that the possessor is guilty of breaking and

entering the place. But if other evidence in the case shows, beyond a reasonable doubt, that the building was broken and entered by someone, and a theft of the goods was accomplished at the time, and by means of breaking and entering, then proof of possession, unexplained, or in the absence of circumstances, raising reasonable doubt,. or in the absence of circumstances raising reasonable doubt as to whether the possession of the goods had been acquired otherwise than· by\ the crime charged, is sufficient to warrant a conviction. But in this ninth instruction, the court emphasizes the error hereinbefore adverted to, by saying that:

"In determining what weight and effect should be given in such case to the fact of recent possession, you should take into consideration the time which has elapsed between the taking of the goods and the finding of them in the possession of the defendant, if you find beyond a reasonable doubt they were so found in this possession, the place from where they were taken, and the distance therefrom to the place where the said goods or articles were found in his possession, if you find they were so found, the kind of property, whether easily transferable or not, what, if anything, was said at the time by the defendant, and all other facts and circumstances tending to explain said possession, or tending to show whether the defendant came into possession of said property *fairly and honestly.*"

Now it is clear that, if a consideration of the facts recited by the court, tending to explain possession, raised a reasonable doubt as to whether the defendant committed the breaking and entering, he could not be convicted even though the jury were satisfied that he did not come into possession of the goods fairly and honestly. The facts and circumstances may disclose that he did not come into possession of the goods fairly and honestly, and yet leave a reasonable doubt as to whether he broke and entered the building in securing the possession. This question has been before this court be-

fore. In *State v. Brundige*, 118 Iowa 92, 97, this court said, in a case similar to the one at bar:

"The most that can be required of him (the defendant) in such cases is that the circumstances be such as to raise a reasonable doubt whether the possession has been acquired otherwise than by the crime charged."

And this even though the explanation is not satisfactory to the jury, and even though it does not show that he came by the possession of the goods honestly, and even though it might affirmatively appear that he came into possession of the goods dishonestly. See cases cited. We are satisfied that the court gave a wrong direction to the jury in the respect indicated in the instructions quoted.

See, also, *State v. Brady*, 121 Iowa 561. In this case, the court told the jury that possession of stolen property would be presumptive evidence of guilt, unless he showed the possession to have been obtained honestly and fairly. The court said:

"If, for instance, the jury believed from the testimony that some unknown person committed both the burglary and larceny, and thereafter sold or delivered the harness to the defendant, who received it knowing it to have been stolen, he could not be said to have obtained possession either honestly or fairly, and under the doctrine of the instruction such possession would justify his conviction. It needs no argument, however, to show such a conviction could not be sustained."

This brings us to a consideration of the second proposition: Is the evidence wholly insufficient to justify the jury in finding that the defendant broke and entered this building 2. CRIMINAL LAW: with intent to commit the crime of larceny? evidence: weight and suf- We have set out all the evidence that the ficiency. State offered, supporting its contention. It is fundamental that, to justify a conviction upon circumstantial evidence, the facts and circumstances relied upon for conviction must not only be established beyond a reasonable doubt, but the facts, when established, must not only be con-

sistent with the defendant's guilt, but inconsistent with any other rational hypothesis. The facts established must exclude every rational hypothesis except the ultimate fact sought to be established, to wit, that the defendant is guilty of the offense charged. The crime sought to be established must be found in the charge made in the indictment. It is essential that the facts proven and relied upon establish the crime charged, and involve the defendant in the guilt sought to be fastened upon him. We think the true rule is that the circumstances offered by the State to prove the facts alleged, upon which guilt is predicated, must be such as lead the mind to the conclusion, beyond reasonable doubt, that the defendant did the acts charged to have been done by him which constitute the crime. The circumstances offered must be such that, when fairly and honestly considered, they exclude all reasonable doubt, and can be explained upon no reasonable hypothesis but that of the defendant's guilt.

We have assumed, in the consideration of this case, that the goods found in the possession of the defendant on the 14th day of November were in the Baker house at the time they left on the morning of the 3d of July, 1915. We have assumed that the defendant was seen by one of the State's witnesses in the middle of the road on the 3d of July, 1915, about 1 o'clock in the afternoon. We assume that this was somewhere near the house that was burned.

This is all the evidence connecting the defendant with breaking and entering this house on the 3d of July. This is wholly insufficient to establish the ultimate fact charged, to wit, that he broke and entered the building on that day. All the testimony, then, upon which the State relies to connect him with the crime charged, to wit, breaking and entering, is founded on the fact that, on November 14th, certain property in the building at the time the Bakers left on the 3d day of July was found in his possession. The fact which the State was required to establish by this evidence, to secure a con-

3. BURGLARY: evidence: sufficiency: recent possession.

viction, was that the defendant, on the 3d day of July, broke and entered this building, with the intent to commit the crime of larceny. The evidence is that the building was securely locked on the 3d of July at the time the Bakers left; that it was securely locked at the time the rescuing party arrived; that it remained so until broken open by the rescuing party; that the contents of the building were rapidly removed and placed at safe distance from the burning structure; that there was a large concourse of people there; that all had access to the building, and each removed for himself such articles as he chose; that the goods remained where the rescuing party had placed them until the owners of the building arrived, about 7 o'clock; that some of the property was gathered into a hayrack and placed in a corncrib, and was found there by the owners on their return; that the building was completely destroyed when the owners arrived; that there were people around the building at that time; that many of the people who had aided in rescuing the property had left. No one of those who testified for the State could identify any of the property rescued from the building, except some of the larger objects of furniture, and no one assumed to say who they were that assisted in rescuing the property, nor from what parts of the building property was rescued.

It is the contention of the State that none of the property in the upstairs rooms was removed; that some of the property found in the possession of the defendant was in the upstairs rooms at the time the Bakers left; but the evidence does not show that property was not removed from the upstairs rooms. Nor does the evidence affirmatively show that the property found in the possession of the defendant was not removed by the rescuing party during the progress of the fire. Two witnesses were called for the State who testified that they did not visit the upstairs, and did not remove any property from the upper rooms; but they do not say, nor does anyone say, that others in the rescuing party did not visit the upstairs rooms and remove the property therefrom.

No one attempts to say that the property found in the possession of the defendant was not removed from the building by the rescuing party. The attempt on the part of the State to make this appear is wholly insufficient in its probative force to establish this fact. There was a large concourse of people, excited and eager to remove all perishable property from the building. No one gave any attention to the smaller articles removed by others, nor even to the articles removed by themselves. The articles found in the possession of the defendant were small articles, not such as would attract attention or impress themselves upon the memory. Conceding that this property found in the possession of the defendant was in the building before the fire, the evidence is wholly insufficient to show that it was not removed from the building by the rescuers during the progress of the fire. There were no marks upon this property by which it could be identified. They were mostly staple articles, and, surely, there was nothing about these goods by which the rescuers could say that they were or were not removed during the fire, and they do not attempt to say.

The court said to the jury:

"If it appears from the evidence that some person did actually break and enter the dwelling house in question, and you find beyond a reasonable doubt that some person stole from the dwelling house in question the clothing or articles introduced in evidence by breaking and entering the building with intent to steal the same, and you further find that the property so stolen was soon afterwards found in the possession of the defendant, then you would be warranted in finding the defendant guilty."

Under this instruction, it was incumbent upon the jury to find that someone actually broke and entered the building; that he broke and entered with intent to commit larceny. If they so found, and found the further fact that some of the property which was the subject of larceny was found in the possession of the defendant, then they would be warranted

in finding the defendant guilty. As said before, there was absolutely no affirmative evidence that anyone broke and entered this building. It was found, when the rescuing party arrived, in the same condition in which it was at the time the Bakers left, so far as this record discloses. To justify a conviction, there must first be evidence that there was a burglary actually committed; that the house had been actually broken and entered by someone, with intent to commit larceny. This being established, then the jury would be justified in finding that the defendant was the one who broke and entered, provided it was proven that a larceny was committed at the time of the breaking and entering, and the goods which were the subject of the larceny were found in the possession of the defendant. Before the finding of goods in the possession of the defendant can be held sufficient to justify a verdict of guilty, it must appear that there was a breaking and entering with intent to commit larceny; that larceny was actually committed at the time of the breaking and entering; that the goods which were the subject of larceny were found in the possession of the defendant. In the absence of any affirmative showing of breaking and entering, possession of stolen goods is not proof of burglary, especially when the facts and circumstances proven are just as consistent with the larceny without burglary.

Upon this record, we think the court should have sustained defendant's motion for a directed verdict. For the errors pointed out, the case is *Reversed* and *Remanded*.

EVANS, C. J., LADD and SALINGER, JJ., concur.