SCHAUER, J., pro tem.
Subdivision 1 of section 39, Los Angeles City Ordinance No. 50515, as amended by ordinance No. 73844, declares that “it shall be unlawful for any person ... to allow, permit or suffer any vehicle registered in his . . . name as registered owner thereof, to stop, stand *769 or park . . . upon . . . any street ... in violation of any provision of this ordinance”. " The complaint in this case alleges, and the trial court impliedly found, that the defendant “did willfully and unlawfully . . . allow, permit and suffer a vehicle registered in his name as registered owner thereof to stop, stand and park . . . upon ... a street . . . in the city of' Los Angeles for a period of time longer than . . . allowed ... by Section 28” of said ordinance.
At the trial, jury being waived, it was stipulated “that on the day alleged in the complaint the defendant was the registered owner of the motor vehicle in question; that on the said day the said motor vehicle was parked by some unidentified person” at a place and for a period in violation of section 28 of said ordinance, and that “the tag (was) left on car and filled out as required . . . and that the defendant has been notified as required” by section 39-2 of said ordinance. There was no other evidence as to possession or control of the vehicle, or knowledge of the same on the part of defendant.
Upon this appeal defendant argues that such evidence is insufficient to support the conviction in that it fails to establish that he was personally the operator or otherwise knowingly participated in such overtime parking. Respondent, on the other hand, cites to us the case of Commonwealth v. Ober, 286 Mass. 25 [189 N. E. 601], adopts its doctrine, and in effect asks us to declare this ordinance to mean, and to uphold it as constitutional in meaning, that a registered owner “must at his peril see to it that the rules and regulations are not violated by his act or by the act of another”.
While their exact significance varies somewhat with the context of their use, we find that as definitive of a person’s criminal conduct the words “allow” (People v. Conness, 150 Cal. 114, 121 [88 Pac. 821]), “permit” (Cramer v. Jenkins, 82 Cal. App. 269, 276 [255 Pac. 877, 256 Pac. 444]), and “suffer” (60 C. J. 990; Black’s Law Diet., 3d ed., p. 1675), all imply knowledge of, coupled with a duty and power to prevent, the particular act or omission, the allowance, permittance or sufferance of which, constitutes the offense. It is important to comprehend that it is not the substantive act or omission, as such, that is declared to be unlawful by ordinances of the type now before us—it is instead the willing toleration thereof, in breach of a duty *770 with power to prevent, that is denounced as an offense. To violate such an ordinance one need not actively either aid or abet the commission of the forbidden substantive act, but on the other hand one cannot “allow”, “permit”, or “suffer”, in the sense here intended, that which he has no power or duty to prevent, or concerning which, without criminal negligence, he has no knowledge.
Our conclusion as to the meaning of such words is founded not alone upon their independent philological significance; their use in the ordinance to define a crime suggests a broader and more impelling reason for holding that they possess the implications of knowledge and wilfulness suggested. The fundamental statutory law of the land declares: “In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence.” (Sec. 20, Pen. Code.) There can be no such union unless the act be done “willfully” or “knowingly”. To divest the words “allow”, “permit” and “suffer”, as used in the ordinance, of their implication of knowledge and intent, would not only destroy the union of act and intent but would create a crime possessing neither of such elements.
Respondent refers generally to cases arising from the sale of intoxicating liquors to minors and sales of impure and adulterated food, points out that it has been held that lack of knowledge of minority in the one case and of the fact of impurity or adulteration in the other, constitutes no defense and asserts that “the principles involved in this case are closely analogous” to those of the cases referred to. It is true that between such eases an analogy may be postulated but elucidation of the very theory which respondent invokes involves assertion of the principle which requires reversal of the judgment in this case. The theory so invoked is stated by respondent as follows: “It is within the legislative power to declare that knowledge of criminal character of act shall or shall not be necessary element of offense” (Respondent’s Points and Authorities, par. VIII). We find such proposition judicially elucidated in People v. Dillon, 199 Cal. 1, 9 [248 Pac. 230], wherein the Supreme Court quotes from People v. O’Brien, 96 Cal. 171 [31 Pac. 45], as follows:
“ ‘It has been held that one who marries a second time under an honest but erroneous belief that a decree of divorce which had been granted was valid is afforded no protection *771 by the invalid decree, and that evidence of his good faith will be excluded. . . . The same principle is applied to many cases, such as selling intoxicating liquors to minors, abducting girls under a certain age, usurping an office under the belief that the usurper was truly elected and the like.’ ”
But preceding the foregoing quotation we find a statement of the principle which it illustrates—the principle for want of compliance with which the proof in the case before us falls short:
“When the statute plainly forbids an act to be done, and it is done by some person, the law implies conclusively the guilty intent ... ”, and again (p. 7) : “To render a person guilty of crime it is not essential to a conviction that the proof should show such person to have entertained any intent to violate law. ... It is sufficient that he intentionally committed the forbidden act. . . . Section 20 of the Penal Code is too clear to require juridical support . . . (P. 8.) ‘It is a familiar rule, that to constitute crime there must be a union of act and intent; but our code provides that “the word ‘wilfully’, when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness' to commit the act or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage.” ’ ” (Italics ours.)
The same proposition was discussed by the Supreme Court m People v. McClennegen, 195 Cal. 445, 469 [234 Pac. 91], and the following language used:
“ ‘The word “knowingly” imports only a knowledge that the facts exist which bring the act or omission within the provisions of this code. It does not require any knowledge of .the unlawfulness of such act or omission; . . . ’
“To make a person guilty of an offense, it is not necessary in every instance that such person should have a specific intent to violate law; it is sufficient that he intentionally commits the forbidden act.” (Italics ours.)
The significance of the principle of law defined and illustrated in the foregoing quotations should now be apparent. Its application to the instant case simply means that in prosecutions under the ordinance in question it will be unnecessary for the prosecution to prove that the defendant knew that there was an ordinance prohibiting parking *772 beyond a limited time in the district where his car was parked, or that defendant, having such ordinance in mind, consciously intended to “allow, permit or suffer” violation thereof, but it does not mean that guilt can be established without proof that the defendant himself “intentionally committed the forbidden act”.
In all of the cases referred to by respondent, guilt (while the act of another may directly contribute thereto) is held to depend primarily and essentially upon the act of the defendant, not upon the act of a third person over whom the defendant is exercising no control. The conclusion in Commonwealth v. Ober, supra, would seem to support respondent’s position, but the reasoning therein expressed is largely in accord with our views. The court there says that the law in that type of case “has put the burden upon the 'individual of ascertaining at his peril whether his conduct is within the scope of the criminal prohibition”. (Italics ours.) To the extent that the burden is coincident with his own conduct (and this may involve responsibility for the conduct of others who are acting within his knowledge and control) we subscribe to such proposition, but' we cannot thereon predicate the conclusion essential1 to sustain the judgment in this case, that the law “has put the burden upon the individual of ascertaining (and controlling) at his peril” his conduct and the conduct of others, out of his presence, without his knowledge, and over whom he has no control, “within the scope of the criminal prohibition”.
To give such effect to the ordinance here involved would be to abolish intent, wilfulness and knowledge as material elements of the offense. It would mean that if a thief stole an automobile and parked or abandoned it in a limited parking area, the registered owner would thereby be rendered guilty of violating the ordinance and himself be made a criminal unless he or someone for him discovered and removed the potentially transgressor creating vehicle before the lapsation of the limited time tolled him from innocence to guilt. Whether the illegal parking was perpetrated by a thief or by one whose possession of the vehicle was lawful, would in itself make no difference. While the fact that the registered owner had consented to the use of his car by the operator thereof upon the occasion of its illegal parking might be a pertinent circumstance, it would *773 not be sufficient, in and by itself, to show his knowledge of, control over, or consent to, the unlawful act. Evidence of the mere fact that an automobile is registered in the name of a person does not constitute prima facie proof, in a criminal case arising out of the illegal operation of the car, that the registered owner was the operator on such occasion, that he had knowledge of, aided or abetted in, or consented to, the same. If the registered owner of an automobile can be made guilty of a misdemeanor for the illegal parking thereof by the act of a person done outside his presence and without his knowledge or consent, then we see no logical reason why such registered owner should not progressively be made criminally liable for the more serious offenses of speeding, reckless driving, violation of section 112, California Vehicle Act, manslaughter and murder, all entirely independent of any knowledge, intent or act of such owner and dependent exclusively upon the criminal whimsy of the itinerant driver.
We do not believe that the Constitution of our nation has yet been swept away to the extent of permitting criminal guilt to be so speciously created and we come to the conclusion that unless defendant had knowledge that his, automobile was being parked during the time that it was parked, and unless such parking was at least passively acquiesced in by him, he would not be guilty of violating the ordinance here concerned.
The evidence being insufficient to establish either such knowledge or acquiescence, the judgment must be, and is, reversed, and the cause is remanded, to the municipal court for a new trial.
Fox, J., concurred.