THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.*
WALTER C. HILDEBRANDT, Appellant.

Argued January 20, 1955; decided April 14, 1955.

*Delon F. Mousaw* for appellant. I. Procedural rules applicable to misdemeanors apply to traffic violations. II. The prosecution failed to identify defendant-appellant as the operator of the automobile photographed and thereby failed to prove a prima facie case. III. The presumption that the owner of the automobile was the operator at the time of the alleged offense of speeding was improper. (*People* v. *Rubin,* 284 N. Y. 392; *Hilton* v. *Bender,* 69 N. Y. 75; *People* v. *Cannon,* 139 N. Y. 32; *People* v. *Terra,* 303 N. Y. 332; *Tot* v. *United States,* 319 U. S. 463; *State* v. *Lloyd,* 233 N. C. 227.) IV. Progress in the field of law enforcement still must be tempered with constitutional safeguards. (*People* v. *Offermann,* 204 Misc. 769.)

*Harry L. Rosenthal, District Attorney* (*John J. Conway, Jr.,* of counsel), for respondent. I. There was sufficient evidence to establish defendant-appellant's responsibility for the unlawful speeding. (*People* v. *Rubin,* 284 N. Y. 392; *People* v. *Dyle,* 21 N. Y. 578; *People ex rel. Woronoff* v. *Mallon,* 222 N. Y. 456.) II. Progress in the field of public safety is aided by the rebuttable presumption which the trial court used. III. The use of the photographs offers positive physical evidence of the violation.

*W. Clyde O'Brien* and *Richard Turner* for Sergeant & Greenleaf, Inc., and Traffic Controls, Inc., *amici curiæ,* in support of respondent's position. I. The courts of this State approve the use by criminal trial courts of the common-law rebuttable presumption that the registered owner of an automobile proven to have been operated in violation of a traffic regulation or ordinance was the person who was operating it at the time of such violation. (*People* v. *Rubin,* 284 N. Y. 392; *City of Buffalo* v. *Thorpe,* 132 Misc. 307; *People* v. *Marchetti,* 154 Misc. 147; *Commonwealth* v. *Ober,* 286 Mass. 25; *Burke* v. *Cincinnati,* 27 Ohio N. P. [N. S.] 589; *People ex rel. Albrecht* v. *Harnett,* 221 App. Div. 487; *People* v. *Cohen,* 128 Misc. 29; *People* v. *Stryker,* 124 Misc. 1; *Griffen* v. *Manice,* 166 N. Y. 188; *People* v. *Jackson,* 182 N. Y. 66; *Knickerbocker* v. *People,* 43 N. Y. 177; *People* v. *Galbo,* 218 N. Y. 283; *People* v. *Berger,* 260 App. Div. 687; *People* v. *Rogan,* 223 App. Div. 242.) II. The use of the phototraffic camera provides an accurate and feasible method of establishing all of the essential elements of a speeding violation other than

direct proof of the identity of the operator of the vehicle. III. The use of the rebuttable presumption of operation of a vehicle by its owner is essential in traffic cases in which the proof of violation is established through use of the phototraffic camera.

DESMOND, J. The question of law on this appeal is: may it be inferred, from the fact that a person is the owner of an automobile, that he is its driver at a particular time?

Defendant's conviction, in a Court of Special Sessions, was for the " traffic infraction " (see Vehicle and Traffic Law, § 2, subd. 29) of driving an automobile at a speed illegal in a restricted speed zone (Vehicle and Traffic Law, § 56, subd. 4; § 95-c). The penalty imposed was a small fine. Police officers, to measure the speed, had used a " phototraffic camera " which takes two photos, at a set time interval apart, of a moving vehicle. The distance traveled, by the car, in that interval, from a fixed point, was the basis for a mathematical computation of the rate of speed. Defendant does not dispute the accuracy of that device and method. However, one of the results of its use, in this instance, was that the driver of the automobile was not identified by the policemen or arrested at the time, and defendant got no notice, till two weeks later, that he was charged with the offense. At the trial, there was no direct proof as to who was in fact operating the car, but simply a showing that the automobile was registered and licensed in the name of defendant as owner. We must, therefore, decide whether the Justice of the Peace, and the County Judge on the appeal, were right in holding that proof of ownership, by this defendant, was, without more, sufficient proof that it was he who was operating it at an illegal speed when the photographs were taken.

The prosecutor asserts (citing *People* v. *Rubin,* 284 N. Y. 392, hereafter discussed) that there is a " rebuttable presumption " in such cases that the owner is the operator. We do not agree. Speeding in an automobile is personal, individual wrongdoing, which can subject the wrongdoer to serious penalties (for the first offense a fine up to $100 and imprisonment for as long as a month [Vehicle and Traffic Law, § 70, subd. 4], and, if the conviction be the third in an eighteen-month period, mandatory revocation of the driving license [Vehicle and Traffic Law, § 71, subd. 2, par (c)]). Such " traffic infractions " are of the grade

of " offenses ", not felonies or misdemeanors, but they are tried like misdemeanors (Vehicle and Traffic Law, § 2, subd. 29, *supra*) and to them, as to " offenses ", there should be applicable the criminal-law rules of presumption of innocence and necessity of proof of guilt beyond a reasonable doubt (see *People* v. *Erickson,* 283 N. Y. 210; *People* v. *Strong,* 294 N. Y. 930; *People* v. *St. Germain,* 302 N. Y. 580). We are reminded, too, that speeding itself is sometimes a misdemeanor (see Public Authorities Law, § 361, subd. 1), and that the " presumption " of identity here indulged in would, for consistency, have to be made available in prosecutions for misdemeanors, and even felonies, committed in the operation of automobiles (such felonies are described in Penal Law, § 1053-a, and Vehicle and Traffic Law, § 70, subd. 5; such misdemeanors are described in Vehicle and Traffic Law, § 17, subd. 5; §§ 58, 68, 70, subds. 1, 5, 5-a, 6, 7, 9, and Penal Law, § 244). At least as used in criminal law, a " presumption " is a rule of law attaching definite probative value to a specific fact, as distinguished from an " inference ", which is a permissive conclusion by a trier of the fact, unaided by any rule or theory of law directly applicable. In a criminal prosecution, any fact presumed must, for due process, have a natural, not an unreasonable or an unnatural, connection with facts proven (*People* v. *Cannon,* 139 N. Y. 32, 43; *People* v. *Pieri,* 269 N. Y. 315, 324; *People* v. *Terra,* 303 N. Y. 332, 335). Although presumptions, in criminal law, need not necessarily be statutory (*People ex rel. Woronoff* v. *Mallon,* 222 N. Y. 456, 464, 465), they often take that form (see *People* v. *Terra, supra,* p. 334). For the asserted " presumption " which is the sole support of this conviction, there is no statutory authority, which means, at least, that the New York Legislature has not disclosed its awareness of a need for such a statutory presumption. We express no advance opinion as to the validity of such a statute if one should be enacted. Other Legislatures have acted (Penn. Stat. Ann., tit. 75, § 739; Conn. Gen. Stat., 1953 Supp., § 1039c; see, as to Ontario statutes, *Regina ex rel. Collins* v. *Greenfield,* 1954, O. W. N., p. 292). Making rules for traffic control is peculiarly a legislative job, and our Legislature has actually provided for other presumptions relating to the use of automobiles in the Vehicle and Traffic Law (see, for instance, § 11, subd. 4).

Now, having ruled out any " presumption ", we must next decide whether the proof supports an inference by the fact trier that this defendant was driving the car. We think it is going much too far to infer the driver's identity from the fact of ownership. We all know that many a passenger car is customarily driven at various times by various persons, we know that many a person owns more than one passenger automobile, we know that some owners are not licensed operators, and we are informed that there are outstanding in this State at least one million more automobile operators' licenses than passenger automobile registrations.[1] From all of that it follows, we think, that it is hardly a normal or ready inference or deduction that an automobile which speeds along a highway is being driven by its owner, and by no other person. Apparently, the question is a new one, but that is because speeders are usually pursued and arrested after pursuit, whereas this identity question arises because of the use of a photographic speed recorded, without pursuit or arrest. The device used may be efficient and scientifically trustworthy, its use may make pursuit and immediate arrest inconvenient or unnecessary, and highway safety may be promoted by eliminating such pursuits. But it takes more than necessity to validate a presumption in a criminal case (*Tot* v. *United States,* 319 U. S. 463, 467), and here we do not even have a presumption.

The People, not unreasonably, put their reliance on *People* v. *Rubin* (284 N. Y. 392, *supra*). Rubin was convicted of violating a New York City parking regulation. There was " no direct proof that stationing of the car in violation of the ordinance was done by the defendant " but this court held that his admission of ownership " made out a *prima facie* case ". However, we do not think this decision was meant to go so far as to make that a uniform rule for every prosecution involving an automobile. After all, parking violations are of a special sort. The car is left unattended, there is usually no one present to be arrested, and it is not unreasonable to charge to the owner an illegal storage of his vehicle in a public street. We, of course, do not repudiate the *Rubin* decision but we think its coverage should be limited to parking cases.

---

1. Round figure estimate from latest available official figures.

The judgments should be reversed, the information dismissed and the fine remitted.

FULD, J. (dissenting). In *People* v. *Rubin* (284 N. Y. 392), this court upheld the defendant's conviction for illegal parking solely on proof that he was the owner of the automobile, and I perceive no reasonable or sound basis for not applying the principle of that case to the one before us. Proof of ownership of a vehicle, the court there decided, constitutes " sufficient basis for an inference of personal conduct ", even though no statute so provides and justifies the conclusion that it was " the owner * * * [who] controlled the car and personally violated the regulation " (284 N. Y., at pp. 396–397).

Whether we use the label " presumption " or " inference," it would seem indisputable that *stare decisis* compels affirmance. The similarities between the *Rubin* case and the present one are unusually striking. Just as in *Rubin*, so here, the trial judge relied upon the inference that the owner was the operator at the time in question, in order to bridge the gap between proof of offense and identity of offender. As here, the inference was not aided by any statute, but resulted solely from the court's use of " a common process of reasoning " (284 N. Y., at p. 396); it was also in the field of " traffic " infractions, and the penalty was almost identical. There, too, the effect of the inference was to raise prima facie proof of guilt, which the defendant could have refuted by offering evidence of an alibi, through the testimony of others if he chose not to take the stand. And, finally, as in this case, the conviction likewise depended upon a finding that it was the defendant himself, not his car, that broke the law.[1]

Without a dissenting voice, this court held that it was permissible to find — given the offense and the fact of ownership — that it was " the owner * * * [who] controlled the car and personally violated the regulation " (284 N. Y., at p. 397).

We should not now lightly disregard the *Rubin* decision, with all its parallels of fact and reason. Surely, we should not do so, merely because in the present case the car was moving and

---

1. The regulation involved in the *Rubin* case was in no sense an "*in rem*" provision, directed against the car itself, but was aimed at the individual who actually parked it; thus, the regulation provided, in so many words, that "*No person* shall park a vehicle" for more than one hour in certain streets. (New York City Traffic Regulations, § 85a; see, also, *People* v. *Rubin, supra*, 284 N. Y. 392, 394.)

attended at the time of infraction, whereas Rubin's was at a standstill and driverless. Nor may we disregard that earlier case, because there are in this state more licensed drivers than cars. It is, nevertheless, as likely that the owner will be at the wheel of his car when it speeds as when it parks.

If, as the majority opinion declares, it is " not unreasonable " to charge the owner of a parked vehicle for " an illegal storage * * * in a public street " (opinion, p. 401), then, it necessarily follows, it is equally reasonable to charge the owner of a speeding vehicle for an illegal journey upon such street. In neither case is it proper to relate guilt to mere ownership of the offending vehicle, but in neither case is that done. Here, as there, guilt is predicated upon the inference, always rebuttable, that the owner was the operator.

Wholeheartedly agreeing with the court's insistence upon " consistency " (opinion, p. 400), I favor affirmance upon the clear and compelling authority of the *Rubin* decision. I am more impressed by the need for present fidelity to its settled rule and rationale than I am by a concern that some day a vehicular manslaughter case, or other serious case, may induce infidelity to today's decision.

However, quite apart from the *Rubin* case, both principle and common sense support affirmance of this conviction. The fact that the legislature has not seen fit to enact the presumption into a statute is of no moment. Nonstatutory presumptions are as deeply imbedded in the fabric of our law as their statutory counterparts. Mention need but be made of the presumption of guilt of crime from proof of defendant's possession of its fruits (*People* v. *Galbo,* 218 N. Y. 283, 290; *Knickerbocker* v. *People,* 43 N. Y. 177); of due delivery of a letter from proof of its mailing (*News Syndicate Co.* v. *Gatti Paper Stock Corp.,* 256 N. Y. 211); and of legitimacy from proof of marriage (*Matter of Findlay,* 253 N. Y. 1), to recall a few in common use in trials. Indeed, the very presumption here in question has long been recognized and applied in civil cases. (See, e.g., *Potts* v. *Pardee,* 220 N. Y. 431, 433; *People* v. *Rubin, supra,* 284 N. Y. 392, 396.)

The nature and origin of such presumptions have been well explained by the court in *People ex rel. Woronoff* v. *Mallon,* 222 N. Y. 456, 464–465: " Presumptions are constantly arising from the proof of facts which move juries or courts to a determination.

Because these presumptions are not classified into statute law does not weaken their force in the particular case. ' Presumptive evidence and the presumptions or proofs to which it gives rise are not indebted for their probative force to any rules of positive law; but juries, in inferring one fact from others which have been established, do nothing more than apply, under the sanction of the law, a process of reasoning, the force of which rests on experience and observation, and such inferences are presumptions of facts.' (*Justice* v. *Lang*, 52 N. Y. 323, 329.) "

Rules of presumption are, of course, nothing more or less than rules of evidence. (See, e.g., *People* v. *Nelson*, 234 App. Div. 481, affd. 260 N. Y. 559.) As such, they are subjects as appropriate for the court as for the legislature. Their validity depends, not upon which body or tribunal proclaims them, but upon how well they square with traditional guarantees of due process. As the United States Supreme Court declared in *Tot* v. *United States* (319 U. S. 463, 467), in invalidating a statutory presumption aimed at possession of weapons by ex-convicts, " The rules of evidence, however, are established not alone by the courts but by the legislature. \* \* \* The section under consideration is such legislation. But the due process clauses of the Fifth and Fourteenth Amendments set limits upon the power of Congress or that of a state legislature to make the proof of one fact or group of facts evidence of the existence of the ultimate fact on which guilt is predicated." It is, therefore, clear that legislative action in this field would not alter the question.

The test of the validity of a presumption has often been formulated. It requires that the fact proved, that is, the fact from which the inference proceeds, be rationally connected to the fact inferred. We have said, quite recently and in a serious criminal case, that a presumption is good or bad depending " upon whether, based on life and life's experiences, a rational connection between the fact proved and the ultimate fact presumed may be said to exist." (*People* v. *Terra*, 303 N. Y. 332, 335.)

The inference is, of course, rebuttable, and, to satisfy the demands of due process, it is not essential that the inferred fact follow as an inevitable conclusion from the proposition which

has been proved. Here, for example, the circumstance that it is not always the owner of a speeding car who is at the wheel does not *ipso facto* invalidate the presumption. The basic test is whether common experience supports *the probability, not the certainty,* that, if the first fact is true, the second is also true. To the Supreme Court, speaking in the *Tot* case, we are indebted for this analysis of the use of presumptions in criminal cases (*supra,* 319 U. S., at pp. 466–467):

> " An indictment charges the defendant with action or failure to act contrary to the law's command. It does not constitute proof of the commission of the offense. Proof of some sort on the part of the prosecutor is requisite to a finding of guilt; it may consist of testimony of those who witnessed the defendant's conduct. Although the Government may be unable to produce testimony of eye witnesses to the conduct on which guilt depends, this does not mean that it cannot produce proof sufficient to support a verdict. The jury is permitted to infer from one fact the existence of another essential to guilt, if reason and experience support the inference. In many circumstances courts hold that proof of the first fact furnishes a basis for inference of the existence of the second."

I cannot say that the courts below were in error in holding that the defendant's ownership of the car " furnishes a basis for inference ", supported by " reason and experience ", that he was driving. And, if that cannot be said, this court may not void the inference, merely because some assign to it a somewhat lesser degree of probability than others have selected.

Beyond that, in assessing the validity of a rule of presumption, we should not wholly lose sight of the practical ends of justice. Speeding on the highway — carrying with it, as it does, an ever-growing toll of death and injury — presents not only a serious police problem, but a grave social problem as well. Scientific devices are at hand to meliorate the menace, but they will be made useless if too heavy insistence is placed upon the need of chase and capture to sustain each conviction. It is impossible to blink the fact that there are simply not enough police officers to patrol the roads efficiently without the assistance of mechanical aids, such as the phototraffic camera here

employed. It is a great pity that the advantages to be derived from its use are to be denied to this state by judicial action.

I do not mean to suggest that these practical considerations would be sufficient to justify an inference otherwise impermissible, or that a presumption would become just and proper merely because it will facilitate a conviction. The balance between the rights of the individual and the interests of society may at times be a delicate one, but here the court, in my view, is going far beyond the necessities of the case. The body of the offense, speeding, has been proved, and only the question of identity remains. It does not strike me as harsh, or as imposing any but the lightest burden, to require a defendant in a case such as this to offer evidence upon a fact peculiarly within his own knowledge, particularly since it may be done through the testimony of others. (See, e.g., 8 Wigmore on Evidence [3d ed., 1940], § 2273, pp. 426–427, 431.)

What the court, through Judge SEARS, wrote in 1940 in *People v. Rubin (supra,* 284 N. Y. 392, 396–397) — and it constitutes an impeccable summary of the good sense of the rule for which I speak — might well have been written for the very case before us:

" To rule that this inference may not be drawn from the established facts would be to deny to the trier of the facts the right to use a common process of reasoning. (*Justice* v. *Lang,* 52 N. Y. 323.) Ownership of a vehicle in civil cases has long been recognized as *prima facie* proof that it was being operated by or for the owner. [Cases cited.] Here, ownership has been held a sufficient basis for an inference of personal conduct. If he was not in control he could easily have produced a witness or witnesses to show it. [Cases cited.] We find it competent under the circumstances to conclude from the proof that the owner of the car controlled the car and personally violated the regulation. [Cases cited.] "

The conviction should be affirmed.

FROESSEL, VAN VOORHIS and BURKE, JJ., concur with DESMOND, J.; FULD, J., dissents in an opinion in which CONWAY, Ch. J., and DYE, J., concur.

Judgments reversed, etc.