Matthias, J.
The question before this court is the validity of Section 27.334 of the Columbus Municipal Code (now Section 2151.06 of the Columbus Traffic Code) which reads as follows:
“If any vehicle is found upon a street, highway, alley, park or other public grounds of the city in violation of any provision of this chapter, or any ordinance of this city, regulating the ■ stopping or standing or parking of vehicles, and the identity ' of the driver cannot be determined, the owner, or person in whose name such vehicle is registered shall be held prima facie responsible for such violation. ’ ’
The defendant alleges that this section constitutes a “rule , of evidence ’ ’ and is invalid because municipalities have no power to create such rules. Defendant contends also that the" ordinance in question is invalid because it is in direct conflict with defendant’s presumption of innocence.
Thus the issue before this court is whether a municipality, in those instances in which the identity of a parking violator cannot be determined, may make the owner of the motor vehicle prima facie responsible for its being illegally parked without proof that such owner parked the vehicle himself or that it was parked with his knowledge and consent.
The advent of the automobile created many problems theretofore unknown to the "law. Due to the potential dangers arising not only from its operation but also from its storage on the public streets a class of crimes has arisen which through neces-j sity require neither guilty knowledge nor intent. Intent is only an element of a crime if it is made so by statute. Many crimes *329 may be committed without the ordinary prerequisite of criminal intent. Examples of such crimes include violations of the pure food and drug laws, the child labor laws, certain building regulations, and certain liquor control regulations. Such crimes are mostly mala prohibita in nature and as such require no guilty knowledge or intent. State v. Kelly, 54 Ohio St., 166, 43 N. E., 163; Portage Markets Co. v. George, 111 Ohio St., 775, 146 N. E., 283; State v. Rippeth, 71 Ohio St., 85, 72 N. E., 298; Kendall v. State, 113 Ohio St., 111, 148 N. E., 367; State v. Morello, 169 Ohio St., 213, 158 N. E. (2d), 525.
While it is true that ordinarily an owner of property is not responsible for the illegal use of that property by another person, there are instances in which the law has placed primary responsibility for the use of property upon the owner. An example is the responsibility of the keeper of a place where liquor is sold for violations of the liquor laws by employees of such place. See Section 4399.09, Revised Code. In the prosecution of a violator of this statute, the state need only prove that the defendant was the keeper of the place, and that intoxicating liquors were unlawfully sold therein. In such a prosecution orders or directions given to employees are not material, nor is actual knowledge of the keeper of the premises that intoxicating liquors were unlawfully sold therein important. Mignery v. State, 10 Ohio App., 232. Thus, because of the nature of the offense and because of the importance of effective enforcement, the Legislature found it necessary to impose vicarious criminal responsibility for a violation of this provision of the liquor laws.
Of the many problems which have arisen from the use of automobiles that of parking such vehicles in metropolitan areas is one of the most pressing. The General Assembly realizing that parking is primarily a matter of local concern enacted Section 4511.07, Revised Code, which reads in part as follows:
“Sections 4511.01 to 4511.78, inclusive, 4511.99 and 4513.01 to 4513.37, inclusive, of the Revised Code do not prevent local authorities from carrying out the following activities with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power:
“ (A) Regulating the stopping, standing, or parking of vehicles * * * ”
*330 The Constitution of this state, in Section 3, Article XVIII, states:
“Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.” (Emphasis added.)
Hence, our Constitution gives to municipalities the broad authority to adopt police regulations (city ordinances) which are not in conflict with general laws. Not only is the ordinance in question not in conflict with such laws, it is in fact authorized by Section 4511.07, Revised Code, quoted above.
In consequence, the regulation of parking has been left primarily to municipalities. Since such entities have the power to regulate parking, it follows that they must also have the power to enforce such regulations.
It is in the field of enforcement of parking regulations that the great problem has arisen. Unlike most motor-vehicle law violations, where the operator is apprehended at the time of the performance of the act, it is indeed the rare instance in which a police officer is in a position to apprehend the parking offender at the time of the violation. Most parking tickets are issued at a time when the operator is absent. Thus, under most circumstances, it is virtually impossible for a city to prove what person actually parked the vehicle; yet due to the hazards which arise from illegal parking it is imperative that such regulations be enforced.
This problem has been met by many municipalities by the enactment of ordinances which make proof of illegal parking and registered ownership prima facie evidence that the vehicle was parked by the owner. In the great majority of instances these ordinances have been upheld. (49 A. L. R. [2d], 456.) In other instances, courts have determined that even without such an ordinance proof of the parking and ownership is sufficient to make a prima facie case against the owner. (49 A. L. R. [2d], 458.)
The city of Columbus, however, has approached the problem in a different manner. We think, in the present instance, that defendant has misinterpreted the meaning of the ordinance here in issue. An examination of that ordinance clearly shows *331 that it creates no “rule of evidence,” nor does it affect defendant’s presumption of innocence. The ordinance merely places prima facie responsibility for the illegal parking of a motor vehicle on the public streets upon the owner of such vehicle. It thus places the responsibility upon the person who is in the best position to know the identity of the operator. The court in the case of City of St. Louis v. Cook, 359 Mo., 270, 221 S. W. (2d), 468, in dealing with an ordinance similar to the one at bar, stated:
“The connection between the registered owner of an automobile and its operation is a natural one. While there are no doubt instances where an owner’s automobile is used without his authorization, yet it is not generally so. If, in fact, defendant’s vehicle was parked at the time without any authorization from defendant, such fact was peculiarly within defendant’s knowledge and, if defendant had desired, the fact could have been easily proved. * * * The ordinance does not make any inferred fact conclusive. And the ordinance does not require a defendant to testify; nor does it deny him his right to make out his defense, or to testify.”
We have here one of the rather rare instances in the law under which, because of the peculiar nature of the property involved, an owner may, under some circumstances, be held responsible for the illegal use of his property by another. The General Assembly of this state has found it necessary under some conditions to make the owner of an automobile absolutely liable for its illegal use by another person. See Section 4507.31, Revised Code, where it is provided that no person may permit a motor vehicle to be driven upon the highways by a minor unless such minor has been properly licensed to operate a motor vehicle. Also, see Section 4507.33, Revised Code, which prohibits the owner of a motor vehicle from permitting such vehicle to be driven by any person not legally qualified to do so. The validity of such statutes, which make the owner of a motor vehicle liable for its illegal use by another, was not attacked and Section 4507.33 was treated as completely valid by this court in Gulla v. Straus, 154 Ohio St., 193, 93 N. E. (2d), 662, and Mt. Nebo Baptist Church v. Cleveland Crafts Co., 154 Ohio St., 185, 93 N. E. (2d), 668. It is to be noted that the ordinance at *332 bar does not go as far as do the statutes to which we have referred. The city of Columbus seeks only to place presumptive responsibility upon the owner of an illegally parked vehicle while the General Assembly, in the above-cited sections, has seen fit to place absolute responsibility upon the owner.
In short, the existence of the ordinance in question is dictated by the practical and modern necessity of maintaining orderly traffic enforcement. Historically, the law has held firmly its jealous regard for the rights of individuals. However, when dealing with certain regulatory offenses, of the type here involved, protection of the public interest is of paramount concern. Professor Sayre, in his article entitled “Criminal Responsibility for the Acts of Another” (see 43 Harvard Law Review, 689, at page 719), commented oh offenses of the type with which we are now concerned, in these terms:
“# # # Today we are seeking to utilize the machinery of criminal administration as an enforcing agency for various social regulations of a purely civil nature, quite unrelated to questions of moral guilt. Criminal law is being forced into fields which are essentially noncriminal. Countless examples are to be found in modern building regulations, speed ordinances, pure food laws, child labor laws, such liquor regulations as are enforceable by light penalties and the like. Violations of such regulatory legislation and ordinances are labeled and dealt with as crimes; but it is quite obvious that the considerations applicable to them are fundamentally different from those applicable to true crimes.
( t # # *
“In the case of the merely regulatory offense, the social interest usually far outweighs the individual’s interest, for the punishment is ordinarily limited to a slight monetary fine and seldom involves imprisonment, while the injury to the social interest, is very direct and evident. * * * In the trial of petty misdemeanors involving these regulatory offenses, therefore, the courts’ attention is naturally concentrated upon protection of the social interest. In such cases, for the sake of more adequate public protection, courts can afford completely to disregard the defendant’s state of mind or lack of individual blameworthiness. They may and often do convict without requiring *333 proof of a mens rea as in ordinary crimes; again, they may and often do dispense with their ordinary insistence upon individual and personal participation as a condition of legal guilt.”
While ordinarily violation of such regulatory offenses, such as those regulating parking, will not result in injury to the violator or to other individuals, we are aware that under some circumstances the violation of a parking ordinance may constitute the proximate cause of injury to other individuals and a resulting serious penalty to the violator. This possibility renders it more essential to facilitate the strict enforcement of such regulations.
The Supreme Judicial Court of Massachusetts has summarized our problem very well. In the case of Commonwealth v. Oder, 286 Mass., 25, 189 N. E., 601, that court said:
“In the instant cases the public mischief to be averted is obvious. The inconvenience of keeping watch over parked vehicles to ascertain who in fact operates them would be impracticable, if not impossible, at a time when many vehicles are parked. We think the rules and regulations of the Boston Traffic Commission * * * were framed and intended to cover and make punishable any violation * * * by the owner of a registered vehicle, whether the particular violation or violations were by the owner or were by a person allowed, permitted, or suffered by the owner of any vehicle registered in his name in any street * * *. In a word this is one of the unusual instances where a person at his peril must see to it that the rules and regulations are not violated by his act or by the act of another.”
The Court of Appeals of New York also has recognized the unusual nature of parking offenses. In the case of People v. Hildehrandt, 308 N. Y., 397, 126 N. E. (2d), 377, 49 A. L. R. (2d), 449, that court stated the point succinctly:
“After all, parking violations are of a special sort. The car is left unattended, there is usually no one present to be arrested and it is not unreasonable to charge to the owner an illegal storage of his vehicle in a public street.”
Thus an ordinance which makes the registered owner of a motor vehicle prima facie responsible for the illegal parking thereof is valid.
The city established its prima facie case against the de *334 fendant when it proved (1) the illegal parking and (2) the ownership of the illegally parked vehicle in the defendant. And, since defendant chose not to testify bnt rested his case and moved to dismiss, the trial court was justified in overruling such motion and in finding the defendant guilty.
The judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, C. J., Zimmerman, Taet, Bell, Herbert and Peck, JJ., concur.