IOWA CITY, Appellee,

v.

John NOLAN, Appellant.

No. 57504.

Supreme Court of Iowa.

Feb. 18, 1976.

John Nolan, pro se.

Robert H. Bowlin, Asst. City Atty., Iowa City, for appellee.

MOORE, Chief Justice.

Defendant John Nolan was charged in the Magistrate Division of the District Court with over a dozen vehicle parking violations under three separate Iowa City ordinances. Upon conviction, he appealed

three of the charges (one under each ordinance) to the Johnson District Court, where he was found guilty under all three ordinances. He was fined a total of $20. Nolan's defense consisted of a challenge to the constitutionality of these ordinances. On appeal, the parties unnecessarily limited the scope of the issues presented to this court and we therefore issued an order directing the parties to file supplemental briefs and set the matter for reargument. We find appellant's challenge to the constitutionality of these ordinances to be without merit and affirm his convictions under all three sections.

I. The case was presented to the trial court upon stipulation that the vehicle was illegally parked under the various ordinances and that defendant was the vehicle's registered owner. No evidence was offered regarding the identity of the operator of the illegally parked vehicle.

The relevant Iowa City ordinances are set out as follows (in pertinent portions):

§ 6.16.2  "*No operator* of a vehicle shall stop, stand or park any vehicle in any of the following places  *  *  *."

§ 6.16.9  "*No person* shall leave any vehicle upon any street, alley or public ground at any time for a period longer than twelve (12) hours  *  *  *."

§ 6.30.7  "It shall be unlawful and a violation of the provisions of this chapter for *any person* to cause, allow, permit or suffer any vehicle registered in the name of or operated by such person to be parked overtime  *  *  *.

"It shall be unlawful and a violation of the provisions of this chapter for any person to permit any vehicle to remain in any parking space beyond [the legal parking time]."

§ 6.54.1  "If any vehicle is found stopped, standing or parking in any manner violative of the provisions of Title 6 and the identity of the *operator cannot be determined*, the *owner* or person or corporation in whose name said vehicle is registered shall be held

*prima facie responsible* for said violation." (Our emphasis).

Read together, these ordinances provide for enforcement of the statutory prohibitions against both active and passive traffic violators. Sections 6.16.2, 6.16.9 and 6.30.7 define the actual violations and are made operable through section 6.54.9 which provides for punishment of the operator if he or she can be found or of the vehicle's registered owner if the operator is not available. These provisions impose a form of strict or vicarious liability upon the registered owner of an illegally parked vehicle. It is upon the constitutional validity of this vicarious liability that our decision in this appeal must rest.

II. We have recently set out the burden to be met by a party challenging the constitutional validity of a statute or ordinance in *Keasling v. Thompson*, Iowa, 217 N.W.2d 687, 689. That discussion need not be repeated here. It will suffice to say that the challenger must overcome a strong presumption of constitutionality and negate every reasonable basis upon which the enactment might be upheld. *In re Henderson*, Iowa, 199 N.W.2d 111, 121. If more than one construction is possible, one of which will render the ordinance constitutional and another unconstitutional or of doubtful constitutionality, the construction by which it will be upheld will be followed and adopted. *State v. Rasmussen*, Iowa, 213 N.W.2d 661, 666.

III. In this criminal matter, the burden of proof upon the prosecution is well established under the due process clause of the Fourteenth Amendment to the United States Constitution. The United States Supreme Court stated in *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375:

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."

This standard applies to both felonies and misdemeanors. *City of Des Moines v. Rosenberg,* 243 Iowa 262, 273, 51 N.W.2d 450, 456.

In a series of United States Supreme Court cases, the most important of which is *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288, the high court has carved out an exception to the general criminal due process considerations in the area of public welfare offenses. These are public regulations that arose in the post-industrial revolution era to cope with the complexities of the then-emerging industrialized world. These regulations have no ancestors in the common law and have been characterized as being:

" * * * in the nature of neglect where the law requires care, or inaction where it imposes a duty. Many violations of such regulations result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize. * * *. The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities. * * *." *Morissette v. United States,* 342 U.S. at 255–256, 72 S.Ct. at 246, 96 L.Ed. at 296–297.

Violations of traffic regulations fall squarely within a proper classification of public welfare offenses. See Sayre, Public Welfare Offenses, 33 Col.L.Rev. 55, 73, 87.

■ There is wide latitude in lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition. *Lambert v. California,* 355 U.S. 225, 228, 78 S.Ct. 240, 242, 2 L.Ed.2d 228, 231; *State v. Dobry,* 217 Iowa 858, 861–862, 250 N.W.2d 702, 704, appeal dismissed, 293 U.S. 519, 55 S.Ct. 87, 79 L.Ed. 632. No general constitutional doctrine of mens rea has ever been articulated. *Powell v. Texas,* 392 U.S. 514, 535, 88 S.Ct. 2145, 2156, 20 L.Ed.2d 1254, 1269. Thus legislation delineating elements of a public welfare offense frequently dispenses with any awareness of wrongdoing. "In the interest of the larger good it puts the burden of acting at hazard upon a person otherwise innocent but standing in responsible relation to a public danger." *United States v. Dotterweich,* 320 U.S. 277, 281, 64 S.Ct. 134, 136, 88 L.Ed. 48, 51. See also *United States v. Park,* 421 U.S. 658, 95 S.Ct. 1903, 44 L.Ed.2d 489, 498, 499; *City of Des Moines v. Davis,* Iowa, 214 N.W.2d 199, 202; *State v. Dahnke,* 244 Iowa 599, 603, 57 N.W.2d 553, 556.

■ Not only may public welfare legislation dispense with a mens rea or scienter requirement, it may, and frequently does, impose a vicarious "criminal" liability for the acts of another. We recognized such liability in *State v. Barry,* 255 Iowa 1329, 125 N.W.2d 833, affirming the conviction of a partner in a car sales agency whose employee, without defendant's knowledge, permitted a customer to use pasteboard plates without application for registration and certificate of title. We there said:

" * * *. It [section 321.26, The Code, 1958 as amended] imposes a duty upon the dealer to see that this requirement is not neglected. It falls within the class of police offenses where the act is prohibited for the welfare of the state. It is in the nature of a prohibition such as is usually found in statutes that forbid a person to permit ice to accumulate before his front door on a city street. As is pointed out in Wharton's Criminal Law, 12th Edition, Vol. 1, § 29, page 45, in such instances it is of no consequence whether the offender was cognizant of the violation of the law. The legislature may adopt such a method as the best way of preventing deleterious results to the public. * *." 255 Iowa 1332, 125 N.W.2d 834.

See, e. g., *Commonwealth v. Minicost Car Rental, Inc.,* 354 Mass. 746, 242 N.E.2d 411 (where car lessee illegally parked, rental agency's conviction upheld under a regulation almost identical with section 6.30.7,

supra); *City of Kansas City v. Hertz Corporation,* Mo., 499 S.W.2d 449 (where driver was not present, vicarious liability imposed on owner under city ordinance very similar to section 6.54.1); *Commonwealth v. Koczwara,* 397 Pa. 575, 155 A.2d 825, cert. denied, 363 U.S. 848, 80 S.Ct. 1624, 4 L.Ed.2d 1731 (conviction upheld where defendant's employees sold beer to minors; jail sentence held invalid but fine left intact).

■ In this appeal the ordinances before us are clearly within a permissible area of regulation in the interest of people's lives and property. The tragic statistics· have been so well promulgated as to be within the ordinary person's general knowledge. About 50,000 lives are lost annually through traffic accidents. A vastly greater number of persons are injured and crippled. Certainly an illegally parked vehicle on a downtown street during rush hour can seriously endanger pedestrian and vehicular travel.

Under the rationale of the above authorities, a registered owner may be vicariously liable for his illegally parked vehicle and subject to punishment pursuant to a public welfare regulation. Whether he may be subjected to imprisonment is not before us now. Compare the language of the statute involved in *United States v. Park,* supra, 421 U.S. at 666, 95 S.Ct. at 1908, 44 L.Ed.2d at 497, n. 10, with Justice Cardozo's language in *People v. Sheffield Farms-Slawson-Decker Co.,* 225 N.Y. 25, 32–33, 121 N.E. 474, 477 and the holding in *Commonwealth v. Koczwara,* supra, 397 Pa. at 586, 155 A.2d 830–831.

■ Under this public welfare doctrine, it is clear section 6.54.1 may impose prima facie strict criminal responsibility upon the registered owner of an illegally parked vehicle. By proving (1) the existence of an illegally parked vehicle, (2) registered in the name of the defendant, and (3) inability to determine the actual operator, the city can make out a prima facie case for imposing responsibility for the violation upon the vehicle's owner. Under prior authority of this court and others, this "prima facie" respon-

sibility means "at first view" or "on its face" or "without more", *State v. Richards,* 126 Iowa 497, 502, 102 N.W.2d 439, 441, the proof of ownership is sufficient to create a jury question on defendant's responsibility for the violation. *Commonwealth v. Pauley,* Mass., 331 N.E.2d 901, 905. This proof would also be sufficient to convict defendant unless the evidence indicated defendant was not in fact responsible for the violation. This permits defendant to come forward with evidence that someone was operating the vehicle without his consent or with other facts which would rebut the prima facie inference that the registered owner of a vehicle is responsible for its operation. In the area of public welfare offenses, such burden shifting is not constitutionally infirm. See *U. S. v. Park,* supra, 421 U.S. at 672, 95 S.Ct. at 1912, 44 L.Ed.2d at 501.

A similar Kansas City ordinance confronted the Missouri Supreme Court in *City of Kansas City v. Hertz Corporation,* supra,

" 'If any vehicle is found upon a street in violation of any provision of this chapter, the owner or person in whose name such vehicle is registered in the records of any city, county or state shall be held prima facie responsible for such violation, if the driver thereof is not present.' "

The Missouri court held:

"Ord. § 34.344, supra, directly imposes liability for the parking violation on the owner, providing the driver of the car is not present. It does not require that the owner be the driver. * * *.

"The words 'prima facie', as used in this ordinance, do not mean that the owner is presumed to be the driver. The phrase, as used here, means that a rebuttable presumption exists that the car was not being operated by the driver without the consent of the owner and that the registration of the car is correct. Unless that presumption is rebutted, the ordinance imposes liability for the parking violation upon the owner." 499 S.W.2d at 451–452.

IV. We hold the Iowa City ordinances considered here fall well within the permissible bounds of public welfare legislation. The inference created by section 6.54.1 does not deny due process to defendant by placing the burden of proof upon him, but rather merely shifts to him the burden of going forward with evidence that the vehicle was not operated by one who the City has a right to presume was operating the automobile with its owner's consent. The convictions must therefore be affirmed.

Affirmed.

MASON, RAWLINGS, LeGRAND, REES, UHLENHOPP and REYNOLDSON, JJ., concur.

McCORMICK and HARRIS, JJ., dissent.

McCORMICK, Justice (dissenting).

This is a small case which involves large principles. I am unable to agree with the majority's view of those principles.

I. Dictum in *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), relied on in the majority opinion, does not purport to authorize state and local government to create "strict liability" crimes without limitation. Immediately after the language quoted with approval by the majority, the Supreme Court added:

> "Also, penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation. Under such considerations, courts have turned to construing statutes and regulations which make no mention of intent as dispensing with it and holding that the guilty act alone makes out the crime. This has not, however, been without expressions of misgiving." 342 U.S. at 256, 72 S.Ct. at 246, 96 L.Ed. at 297.

Although the *Morissette* decision does not delineate exactly how far government may go in this area, it does indicate three factors must be present: (1) the conduct must at the very least be akin to common-law negligence, (2) the penalty must be slight, and (3) the conviction must not carry a damaging stigma. Government may not make conduct criminal which is wholly passive. *Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957).

In *Lambert,* the Supreme Court quoted with approval the following statement from Holmes, The Common Law, p. 50, "'A law which punished conduct which would not be blameworthy in the average member of the community would be too severe for that community to bear.'" 355 U.S. at 229, 78 S.Ct. at 243, 2 L.Ed.2d at 232. I believe the construction given ordinance 6.54.1 by the majority in this case puts it in this category.

Under the majority construction of the ordinance an automobile owner is guilty of a crime when his car is illegally parked in Iowa City unless he proves the car was being operated without his consent on the occasion involved. Although the record does not show what maximum penalty is possible for such crimes in Iowa City, the conduct is a misdemeanor and may include misdemeanor penalties, a maximum fine of $100 or jail sentence of 30 days. §§ 321.-236(1), 321.482, The Code. In addition, an alleged violator is subject to misdemeanor prosecution and maximum penalties for failure to appear. § 321.487, The Code.

These penalties and this stigma do not exist under the Missouri ordinance involved in *City of Kansas City v. Hertz Corporation,* 499 S.W.2d 449 (Mo.1973), from which the majority takes its construction of the ordinance in this case. In Missouri a prosecution for ordinance violation is regarded as a civil action. *Kansas City v. Howe,* 416 S.W.2d 683, 688 (Mo.App.1967). The maximum penalty under the ordinance in *Hertz* was a relatively small fine and included no potential incarceration. 499 S.W.2d at 453.

Many states do not treat ordinance violations as misdemeanors. 9 McQuillin, Municipal Corporations, § 27.38 at 700 ("The violation of an ordinance is usually not viewed as a misdemeanor unless its violation is expressly declared to be such."). See, e. g.,

*People v. Hildebrandt,* 308 N.Y. 397, 126 N.E.2d 377 (1955).

In Iowa, without regard to the passivity of the owner's conduct, he is subject to criminal conviction and criminal penalty which may be as great as 60 days in jail, 30 days upon conviction of the parking offense, if authorized by the ordinance, and 30 days if he fails to appear as required.

If an illegal parking violation is not a "true crime", as maintained in the majority opinion, it should not be called a crime nor should it carry criminal penalties. If it is a "true crime," vicarious strict liability is unreasonable and denies substantive due process of law. "Where the offense is in the nature of a true crime, that is, where it involves moral delinquency or is punishable by imprisonment or a serious penalty, it seems clear that the doctrine of *respondeat superior* must be repudiated as a foundation for criminal liability. For it is of the very essence of our deep-rooted notions of criminal liability that guilt be personal and individual * * *." Sayre, Criminal Responsibility for the Acts of Another, 43 Harv.L. Rev. 689, 717 (1930). See *People v. Sheffield Farms-Slawson-Decker Co.,* 225 N.Y. 25, 121 N.E. 474 (1918); *Commonwealth v. Koczwara,* 397 Pa. 575, 155 A.2d 825 (1959), cert. denied, 363 U.S. 848, 80 S.Ct. 1624, 4 L.Ed.2d 1731.

Municipal parking regulations like those involved here utilize the machinery of criminal administration as an enforcement tool for social regulations purely civil in nature. See *Commonwealth v. Koczwara,* 397 Pa. at 580, 155 A.2d at 827. Due process does not permit the City to have it both ways. The right not to be labeled a criminal for conduct acknowledged not to amount to a true crime is cherished and constitutionally protected. Ordinance 6.54.1 of Iowa City, as construed by the majority, deprives those convicted under it of that basic right. It thereby violates the due process clause of the Fourteenth Amendment of the United States Constitution.

This is the same conclusion reached in analogous situations in a number of other jurisdictions. *Red Top Driv-Ur-Self v. Potts,* 227 Ark. 627, 300 S.W.2d 261 (1957); *People v. Forbath,* 5 Cal.App.2d Supp. 767, 42 P.2d 108 (1935); *City of Seattle v. Stone,* 67 Wash.2d 886, 410 P.2d 583 (1966).

If illegal parking is as serious as the majority opinion contends, it should be a crime, but the government must then accept the burden of proving personal and individual guilt. However, one of the violations alleged here was under an Iowa City meter ordinance. It is difficult to equate the parking meter system with the lofty goal of preventing traffic fatalities. We are not told by the majority how failure to pay the City's rental charge for temporary storage of a vehicle in a public parking place endangers the public safety.

Moreover, the majority opinion fails to recognize the difference between strict liability and vicarious liability. The traffic ordinances under which defendant was charged purport to impose strict liability. They make illegal parking an offense without regard to the state of mind of the vehicle operator. That is strict liability as discussed in *Morissette.* Here, however, under the majority's construction of § 6.54.1, the issue is not only strict liability but vicarious liability. The majority sustains an ordinance which makes the vehicle owner culpable for conduct for which the vehicle operator is strictly liable. The owner's vicarious liability is predicated wholly on vehicle ownership and presumed authorization of its use by the operator. No relationship akin to common-law negligence is involved. No notice that the vehicle may be or was illegally parked is required. *United States v. Dotterweich,* 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943), relied on by the majority as authorizing imposition of guilt on a vehicle owner, was explained in *United States v. Park,* 421 U.S. 658, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975). Under *Park* vicarious liability is properly imposed when the person charged fails to exercise authority and supervisory responsibility in relation to the

violation by another. No such authority and supervisory responsibility exists in the ordinary relationship between a motor vehicle owner and bailee.

In any event, because § 6.54.1, as construed by the majority makes conduct criminal which the majority opinion says is not truly criminal, I would hold it is invalid on due process grounds.

II. Nor do I accept the assertion in the majority opinion that it is somehow acceptable to shift the burden of proof to a defendant in a mere "public welfare offense". The due process clause protects any accused against conviction of any crime "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970).

Mere law enforcement or prosecutorial inconvenience does not justify trampling on rights which are constitutionally assured. This includes shifting the risk of non-persuasion on elements essential to prove guilt of crime. *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *State v. Monroe,* 236 N.W.2d 24 (Iowa 1975).

III. I believe § 6.54.1 actually means that upon proof a vehicle is illegally parked in Iowa City, an inference arises that it was either illegally parked by the owner or that the owner authorized the illegal parking. The inference represents an effort by the City to establish culpability of the owner by permitting his responsibility for the illegal parking to be inferred unless he overcomes it by evidence in defense. This is closer to the theory under which the convictions occurred in the present case than the majority's theory.

The question then presented is whether this inference accords with due process. I do not believe it does, any more than the vicarious liability construction.

In order to accord with due process, the evidence deemed sufficient by the ordinance to invoke the inference must itself be sufficient for a rational juror to find the inferred fact beyond a reasonable doubt. See *Barnes v. United States,* 412 U.S. 837, 843, 93 S.Ct. 2357, 2361–2362, 37 L.Ed.2d 380, 386 (1973); and *Turner v. United States,* 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970).

In *Turner* and *Barnes* the Supreme Court applied the reasonable doubt standard without saying it is a requirement of due process. Application of the reasonable doubt standard in *Turner* caused some commentators to conclude the Court actually adopted it in that case. McCormick on Evidence, § 344 at 815–817 (Second Ed.1972); Christie and Pye, Presumptions and Assumptions in the Criminal Law: Another View, 88 Duke L.J. 919, 921–923 (1970); Note, The Unconstitutionality of Statutory Criminal Presumptions, 22 Stan.L.Rev. 341, 352–353 (1970). The later decision in *Barnes* supports this conclusion.

I do not see how any standard less than a reasonable doubt standard, as applied in *Turner* and *Barnes,* could be squared with the rule of *In re Winship,* supra. If, as *Winship* says, the due process clause protects an accused against conviction except upon proof beyond a reasonable doubt of every essential element of the crime, then any lesser standard would deny due process. When the presumption of innocence collides with a lesser inference, the lesser inference must give way. *State v. Priebe,* 198 Iowa 609, 610, 199 N.W. 276, 277 (1924).

If § 6.54.1 is construed as purporting to make proof of ownership prima facie evidence that the owner illegally parked the vehicle or authorized the illegal parking, an essential element of the City's case, the City can get to the trier of fact on that element by proving ownership alone. In such a situation, unless proof of ownership alone would permit a rational juror to find this element, the inference would deny an accused due process of law.

As a matter of law, proof of vehicle ownership alone would not permit a rational juror to say beyond a reasonable doubt that

the owner was the operator who illegally parked the car or that he authorized the illegal parking. In this highly mobile society, common experience teaches that the chances are too great that he did not. "The possibility is sufficiently real that a conviction resting on the * * * [inference] cannot be deemed a conviction based on sufficient evidence." *Turner v. United States,* supra, 396 U.S. at 424, 90 S.Ct. at 656, 24 L.Ed.2d at 627. A rational juror could not find from proof of ownership alone that illegal parking of the vehicle by another person acting entirely on his own was not a reasonable possibility.

Hence, even under this construction of the ordinance, it would infringe due process.

IV. Even if the majority's construction of Iowa City ordinance 6.54.1 were correct, and constitutional, the fact remains defendant was tried and convicted in district court under a different construction of the ordinance. At that time the city attorney, defense attorney, defendant, and trial court all believed the effect of § 6.54.1 was to create an inference that the registered owner of an illegal parked vehicle was the driver who illegally parked it. The only dispute related to the constitutionality of the inference. The parties stipulated that the vehicle was illegally parked and that defendant was the registered owner. A motion to dismiss in which defendant alleged the ordinance denied him due process of law by relieving the City of its obligation to prove beyond a reasonable doubt his identity as the operator of the illegally parked car was overruled by the trial court. Thereupon defendant was convicted and fined.

Now the majority opinion puts a different construction on the ordinance than did the parties and trial court. Under the majority's construction, the ordinance imposes "prima facie strict criminal responsibility" when three elements are established in the City's proof: "(1) the existence of an illegally parked vehicle, (2) registered in the name of the defendant, and (3) *inability to determine the actual operator,* * * *.*" (Italics supplied).

The City's inability to determine the actual operator was not part of the stipulation of the parties nor does the record show any evidence on that issue. I do not understand how the majority can affirm defendant's convictions when they occurred under a presumably mistaken view of the law by the trial court which did not require the City to show one of the elements that the majority says must be proved for § 6.54.1 to be applicable. With a record devoid of any evidence on that element, it can hardly be said it was established as a matter of law.

We have consistently held that a conviction cannot stand when proof of any essential element is lacking. *State v. Brown,* 176 N.W.2d 180, 181 (Iowa 1970), and citations. We have also reversed and remanded for new trial when trial courts have applied an incorrect rule of law in the proceedings leading to conviction except in those rare instances when the error has been found to be harmless or without prejudice to the defendant.

Even under the majority holding, the case should be reversed and remanded for new trial.

HARRIS, J., joins in this dissent.