STATE OF IOWA, Appellee, v. OLIVER LEIB, Appellant.

CRIMINAL LAW: Evidence—Locus in Quo. Testimony tending to
1, 6   show the condition of the scene of a homicide—an isolated cabin—
         six months after the homicide occurred, and testimony identifying
         certain exhibits found in the cabin, are relevant, even though

there is no affirmative showing that no change in condition had taken place in the preceding six months, the accused being the sole occupant of the place.

CRIMINAL LAW: Evidence—Harmless Error. The reception of testimony revealing the fact that an accused was known by various harmless nicknames is quite nonprejudicial.

CRIMINAL LAW: Evidence—Motive—Payment of Money to Deceased. The reception of testimony on the trial of a murder charge, to the effect that the deceased had been paid certain money shortly preceding the alleged felonious killing, is erroneous, when no effort is made to show that the accused, even inferentially, had knowledge that the deceased possessed such money.

CRIMINAL LAW: Evidence—Expert Evidence—Manner of Inflicting Wound. A physician may testify as to the manner in which a skull *might* be fractured.

CRIMINAL LAW: Evidence—Demonstrative Exhibits. In the trial of a charge of murder, an exhibit, properly identified, in the form of a board through which shot had passed, and with toothpicks inserted in the holes to indicate the direction taken by the shot, is relevant and competent.

CRIMINAL LAW: Appeal and Error—Harmless Error—Improper Proof of Properly Proven Fact. Permitting proof of a fact by hearsay testimony is harmless when the fact is concededly shown by competent testimony.

HOMICIDE: Degrees—Improper Submission. Murder in the first degree must not be submitted to the jury in the absence of evidence which will sustain a finding of the elements of premeditation and deliberation. Evidence reviewed, and held insufficient to justify such a submission.

CRIMINAL LAW: New Trial—Reference to Failure to Testify. A statement by the county attorney in argument to the jury in a criminal case, to the direct effect that the accused—who had not testified—had not denied a certain specified material fact, constitutes reversible error. (Sec. 13891, Code, 1924.)

*Appeal from Dubuque District Court.*—D. E. McGUIRE, Judge.

DECEMBER 11, 1924.

THE defendant was indicted for the crime of murder in

the first degree, and upon trial was convicted of said offense.— *Reversed.*

*John J. Kintzinger*, for appellant.

*Ben J. Gibson*, Attorney-general, *Maxwell A. O'Brien*, Assistant Attorney-general, and *A. J. Kane*, County Attorney, for appellee.

FAVILLE, J.—In the winter of 1923, appellant and one John Kirkpatrick were engaged in cutting timber in Dubuque County. The two men lived in a cabin located in the timber, about a mile and a quarter from the nearest house, and about the same distance from any road. The cabin was a small building, with two rooms on the first floor. On Sunday, January 21, 1923, appellant and Kirkpatrick spent a portion of the day at the home of one Lahr, leaving there, with Kirkpatrick's horse and buggy, about seven o'clock in the evening. While at Lahr's place, the parties all drank liquor, and both appellant and Kirkpatrick were considerably under its influence when they left. Nothing further was seen of either party by any witness until the following Tuesday, when appellant again appeared at Lahr's place, at about nine o'clock in the morning, driving Kirkpatrick's horse. At that time, he told Lahr that he had taken Kirkpatrick to Cascade, to take the train for a visit with his daughter in Wisconsin. He requested Lahr to go with him to the cabin and get some of his clothes and other things, and this was done. Two days later, appellant again went to the home of Lahr, with Kirkpatrick's horse and buggy, and made arrangements with Lahr to keep them there. While at the cabin on the first trip, appellant gave Kirkpatrick's watch to Lahr, and after they had returned from the cabin to Lahr's home, he gave Marcella Lahr, Kirkpatrick's watch chain.

On August 10, 1923, a woman, while picking berries in the timber about three quarters of a mile from the cabin, found the body of Kirkpatrick. An examination disclosed a fracture at the base of the skull.

On February 2, 1923, appellant told the witness Beaman that he had killed Kirkpatrick in a fight, and that they had

tussled for possession of a shotgun, and that the gun went off, and appellant struck Kirkpatrick over the head with the gun barrel, and that he took the body to the woods and covered it up. In February, he also told one Ingles that he had killed Kirkpatrick.

Appellant was arrested on August 14, 1923, and after his arrest, told the sheriff the details about the killing of Kirkpatrick. In brief, his story was that he and Kirkpatrick drank considerable liquor on the visit at Lahr's, and when they arrived at the cabin, it was dark, and there were no lights in the house; that he went into the cabin first, and immediately began to fix the fire in the stove, and was on his hands and knees, so employed, when Kirkpatrick came into the room and came over to where appellant was by the stove, and kicked him in the mouth, knocking appellant over backward; that, when he went to raise up, Kirkpatrick again kicked him; that, in the darkness, he reached up in the air, and felt the gun barrel; that he and Kirkpatrick each had hold of the gun at the same time; and that they tussled for its possession, and the gun broke in two, leaving the stock in the hands of Kirkpatrick, and the barrel in the hands of appellant. Before it so broke in two, it was discharged. Appellant stated that he swung the part of the gun he had, in the air, and hit Kirkpatrick, knocking him down. He stated that he then went out of doors, and shortly afterward returned, and went upstairs, where he slept. In the morning, he found Kirkpatrick's body lying on the floor near the stove, downstairs, and he took the body on a sled, and drew it to the place in the woods where it was afterwards found.

About the time of appellant's arrest, the cabin was searched, and various articles were found therein, including the stock of the gun. At the time appellant went to Lahr's, after the killing, he told Lahr that the barrel of the shotgun was under the seat in the buggy; and it was found there.

I. Appellant contends that the court erred in receiving evidence, over appellant's objection, as to the condition of the cabin and the surroundings thereof in August of 1923, without

1. CRIMINAL LAW: evidence: *locus in quo.* there being first a preliminary showing that the conditions discovered at that time were the same as they were on or about January 2, 1923.

We think the court did not err in the admission of this testimony. The cabin was in an isolated place, and there is no claim of any kind that any person except appellant had access to it, or had occupied it from the time of the tragedy until the examination of the premises, in August, 1923. The testimony as to the condition so discovered was properly received.

II. Appellant contends that the court erred in receiving evidence as to different names by which appellant had been known. It appears that he went by the name of "Frenchy," and also "Scott." These appear to have been merely nicknames by which appellant was known, and the witnesses referred to him by these names.

2. CRIMINAL LAW: evidence: harmless error.

We do not see how this evidence could have been prejudicial to appellant, or how it would have had any tendency to inflame the minds of the jury against him. There was no error here.

III. A witness for the State testified that he paid Kirkpatrick certain money: once in November, 1922, and again in January, 1923, being about $50. The theory is that this testimony was admissible as tending to show a motive on the part of appellant. There was no showing that appellant had any knowledge that said money had been paid to the decedent. The evidence also shows that, about two days after the tragedy, appellant borrowed $8.50 from the witness Lahr.

3. CRIMINAL LAW: evidence: motive: payment of money to deceased.

The fact that the decedent had been paid the money referred to, prior to the time of the tragedy, not in the presence of appellant, and without any proof of circumstances from which it could be inferred that appellant knew that the decedent had received said money, and without any proof that decedent had it at or about the time of the tragedy, was wholly immaterial in the case, and the court should have excluded this item of testimony from the record, on appellant's motion.

IV. The State produced as an expert a physician, who

made an examination of the skull of the decedent, and the skull itself was produced before the jury as an exhibit, and examined by the physician in connection with his testimony. · Complaint is made of a question propounded to the expert as to how a skull *could* be fractured in the manner in which decedent's skull was broken. The physician described that the blow would have to be low, and be directed obliquely upward, in order to strike the part of the skull that was broken. The physician did no more than state what must have been obvious to the jury, from an examination of the skull and their general knowledge of anatomy regarding the position of the skull and its relation to the body, and was only asked, in any event, to testify as to how the fracture *could* have occurred. The testimony of the expert did not invade the province of the jury, and the court did not err in receiving it.

**4. CRIMINAL LAW: evidence: expert evidence: manner of inflicting wound.**

V. The boards in the partition of the cabin through which the shot had been fired were removed, and offered as exhibits, upon the trial of the case. They showed where shot had passed through the boards, and it appeared that toothpicks had been inserted in the shot holes in the boards, indicating the course of the shot; and a witness for the State was permitted to testify that the toothpicks pointed in the direction of the door of the cabin.

**5. CRIMINAL LAW: evidence: demonstrative exhibits.**

There was no error in the admission of this testimony. It was simply a proper method of bringing before the jury the fact of the direction and course of the shot that were fired through the boards.

VI. Appellant complains that certain exhibits which were found in August, 1923, in and about the cabin, were received in evidence without any previous showing that these conditions were the same as at the date of the tragedy. As before stated, there is no claim that any person except appellant had occupied the cabin or interfered with it in the least, from the date of the tragedy until the time of the finding of the exhibits. The exhibits so offered were proper for the consideration of the jury, upon the record as made, and the court did not err in receiving them.

**6. CRIMINAL LAW: evidence: *locus in quo.***

In this connection, error is also predicated upon the ad-

mission in evidence of certain photographs, which. it appears were taken in August, 1923. We think the record shows that the proper foundation was laid for the admission in evidence of the photographs, and that no error was committed at this point.

VII. The sheriff of the county testified as a witness, as follows: "I afterward found the watch at Theodore Lahr's, and Theodore Lahr told me he had received it from Leib."

7. CRIMINAL LAW: appeal and error: harmless error: improper proof of properly proven fact.          A motion to strike out the last clause of the statement, as hearsay, was· overruled. It should have been sustained. There is no claim that the statement was made in the presence of appellant; but the ruling of the court was wholly without prejudice, because Lahr, as a witness, testified to the identical transaction, and stated that he had received Kirkpatrick's watch from appellant. There was no controversy in regard to the fact.

VIII. Appellant requested an instruction on the question of his character as a peaceable and quiet citizen. The court refused the instruction in the form drawn by appellant, but gave an instruction on its own motion on the same subject. We think the court did not commit reversible error in refusing to give the instruction in the form requested by appellant.

IX. Appellant requested the court to withdraw from the consideration of the jury the offense of murder in the first degree.

8. HOMICIDE: degrees: improper submission.          We have previously set out the salient facts in regard to the killing of Kirkpatrick. There are some corroborating circumstances in the case; but the fact of the killing and the manner in which it was done come wholly from the lips of appellant, by admissions to the officers and by statements to other parties. There are no facts or circumstances in the record to warrant a conclusion that the immediate act of killing was done in any other way than as appellant described it; while there are facts and circumstances in the record tending to corroborate his story as to the manner in which the killing occurred. There is no contention whatever but that appellant killed Kirkpatrick, and that he did it in substantially the manner described by him, by strik-

ing Kirkpatrick on the head with the barrel of the shotgun. The fractured skull and other circumstances tend to corroborate appellant's admission in respect to the manner of the killing.

In a general way, murder is defined as the unlawful killing of a human being, with malice aforethought, either express or implied. Under our statute, murder is murder in the first degree if it has the additional element of premeditation and deliberation. Proof of intentional homicide, without the circumstances of mitigation or excuse, affords a presumption of malice, and therefore murder. The use of a deadly and dangerous weapon in a deadly and dangerous manner raises a presumption of malice, and therefore of murder; but in such instances, the presumption is of murder in the second, and not in the first, degree. *State v. Phillips*, 118 Iowa 660. The intent to kill may be inferred from the use of a deadly weapon in a deadly and dangerous manner; but it is not sufficient from this alone to draw the inference of deliberation and premeditation, for this would make one inference the basis of another, which, of course, cannot be done. *State v. Phillips*, supra.

In this case, we have examined the record with care, and fail to find therefrom any evidence that would justify the court in submitting to the jury the question of murder in the first degree. In other words, there is an utter failure of any proof of the essential ingredients of premeditation and deliberation which are required to raise the offense to that of murder in the first degree. Appellant alone described how the transaction took place. It is his contention that he was assaulted by the decedent while he was on his knees, fixing the fire. Both of the parties were, at the time, under the influence of liquor. Appellant claims that Kirkpatrick kicked him in the mouth. There is a conflict in the evidence as to whether, shortly after the transaction, appellant showed any signs of injury. The room was dark, and, according to the story upon which the State must rely, appellant and the decedent each got hold of the shotgun, and struggled for its possession. They pulled the gun apart, and appellant had possession of the gun barrel, with which he struck the fatal blow, breaking the decedent's skull. There was some evidence of an attempt on the part of appellant to conceal the crime, not only by hiding the body, but by covering up

bloodstains about the premises. There is no contention or claim on the part of the State that the killing occurred in any other way than by the striking of the blow with the gun barrel. The crime of murder cannot be raised to murder in the first degree because of premeditation and deliberation, unless there is some evidence in the case from which premeditation and deliberation may be found. No question is involved in this case with regard to the length of time that may be required, in order for there to be premeditation and deliberation; but, taking the case as made by the State, with every legitimate and proper inference to be drawn therefrom, the conclusion is unescapable that the State failed to establish the necessary elements of premeditation and deliberation which would raise the crime to that of murder in the first degree.

Appellant's request to withdraw from the consideration of the jury the charge of murder in the first degree should have been sustained, and the trial court erred in submitting this offense to the jury. As bearing on the question discussed, see *State v. Sopher,* 70 Iowa 494; *State v. O'Donnell,* 176 Iowa 337, 341; *State v. Phillips,* supra.

X. Appellant claims that the court erred in giving the instruction on reasonable doubt. A critical analysis of the instruction as given is submitted to us. We think, however, that the instruction as given did not depart substantially from the instructions given on this subject which have been approved by this court, and that it was not erroneous.

XI. Appellant complains of the instruction given by the court on the question of circumstantial evidence. The instruction as given substantially comports with the ordinary and usual instruction; and while it might have been amplified, we find that it was not erroneous.

XII. Complaint is made of instructions submitted on the question of murder in the first degree. Our holding being that the court should not have submitted the question of murder in the first degree in any event, it is unnecessary for us to pass upon the instructions by which this offense was submitted to the jury.

XIII. Complaint is made of an instruction given by the court on the matter of self-defense. We think that, when the

instructions on this subject are read and construed together, the court fairly stated to the jury the correct rule of law in regard to this subject, and that no error was committed of which appellant can complain.

XIV. Appellant complains of misconduct on the part of the prosecutor, in argument to the jury. During the course of the argument, the prosecutor said: .

9. CRIMINAL LAW: new trial: reference to failure to testify.

"Conclusively, this man killed John Kirkpatrick, and he says that he did. He don't deny it. He struck him over the head with that gun barrel, and he don't deny it; and he took three inches off the base of the skull.''.

At this point of the argument, counsel for appellant objected to the statement by the prosecutor, to the effect that ''he don't deny it.'' A colloquy followed, and the court said:

''The court holds that the language of counsel, no matter what his intentions were, is ill-advised; and the court now instructs the jury to the effect that counsel had no right to draw any inferences from the fact that the defendant did not take the stand. If you so understood counsel by the language which counsel used, you are instructed to give it no consideration in that respect or in that regard.''

The statute, Section 5484, Code of 1897, provides that a defendant shall be granted a new trial if the attorney for the State, during the trial, refers to the fact that the defendant did not testify in his own behalf. We think this argument was improper. The trial court evidently regarded it as being at least ''ill-advised,'' and seems to have left it for the jury to determine whether counsel meant to refer to the fact that the defendant did not testify in his own behalf.

The case is somewhat similar to *State v. Nicola,* 169 Iowa 171, wherein we held that the statement by counsel that the defendant had not denied a matter of testimony, required the granting of a new trial. We therein said:

''The reference made by counsel in argument was specifically to the defendant as not having denied a matter of testimony; and the trial court was of opinion that counsel was referring to defendant's failure to take the witness stand on his own behalf. If the court so understood it, certainly the jury

must have had the same impression. Surely, after hearing the remarks of the court, no doubt remained in its mind. So long as the statute remains in force, ·it must be respected by the courts, even though they regard it as of doubtful propriety."

A new trial should have been granted. .

Other errors assigned by appellant are involved in those already discussed, or are without merit.

For the reasons pointed out, the judgment of the district court must be reversed, and a new trial granted. It is so ordered.—*Reversed and remanded.*

ARTHUR, C. J., and EVANS and PRESTON, JJ., concur.