**STATE of Iowa, Appellee,**

v.

**Ward E. WILLIAMS, Appellant.**

No. 53542.

Supreme Court of Iowa.

Sept. 24, 1970.

Lewis A. Royal, and Tesdell, Miller & Rydell, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., and Michael J. Laughlin, and James W. Hughes, Asst. Attys. Gen., for appellee.

BECKER, Justice.

Defendant was indicted and tried for the crime of embezzlement by bailee, section 710.4, Code of Iowa, 1966.[1] Jury verdict of guilty was returned, defendant's post trial motions were overruled and he was sentenced to the State Penitentiary for a term not exceeding five years. He appeals. We reverse.

The embezzlement charge is an outgrowth of a business arrangement between defendant, his father and Liberty Livestock Farms, a partnership owned by Dwaine Clark and Dr. Joe Graham. Both Earl Williams, defendant's father and Dwaine Clark, one of the partners, were deceased at time of trial.

The parties mentioned entered into an agreement under which the partnership was to deliver 35 head of Hampshire open gilt hogs and 2 boars to defendant and his father for breeding purposes. Defendant and his father were to keep the hogs long enough to farrow and raise two litters of pigs. Thereafter the partnership was to receive one hog from each litter plus the return of the hogs originally delivered.

The 35 gilts and two boars were delivered as agreed to the farm owned by defendant's father and operated by defendant. Defendant took delivery of the animals.

The contract provided the gilts were to be large enough to breed and the boars large enough for service. One of the State's witnesses notes that he talked to defendant after the hogs were delivered and received complaints that the hogs were too small. Defendant claims the hogs were too small and were returned.

The contract contemplated defendant and his father would have the hogs on their farm for over a year. Delivery was made February 24, 1967. Frank Madera told of visiting defendant's farm and seeing the hogs in early April 1967. Dwaine Clark died May 27, 1967. His son-in-law, Leo Seuferer, took over the management of the partnership, discovered the contract for 35 gilts and two boars in the active file but took no further action until February 3, 1968, when he went to defendant's farm to check on the animals. Neither defendant nor his father was at home. Seuferer looked around the premises but saw no hogs. Two days later he reached defendant on the telephone and asked how the hogs were getting along. Defendant said they were doing fine. Seuferer then said he had been at the farm the previous Saturday and did not see any hogs on the farm. The telephone then went dead and Seuferer could not immediately reestablish connections.

Later the same evening Seuferer again called defendant and said he wanted to pick up the animals belonging to Liberty

1. "Embezzlement by bailee. Whoever embezzles or fraudulently converts to his own use, or secretes with intent to embezzle or fraudulently convert to his own use, money, goods, or property delivered to him, or any part thereof, which may be the subject of larceny, shall be guilty of larceny and punished accordingly."

Livestock Farms. Defendant said he and his father did not have the animals, they had only been on the farm about a week when they were picked up. Defendant said he had been thinking about another deal when Seuferer had called earlier in the evening.

Defendant acknowledges the above telephone calls but denies the substance of the conversation. He denied he hung up on the first conversation and said that during the second conversation he told Seuferer Dwaine Clark had picked up the hogs.

Defendant did not produce the hogs and Seuferer then took the matter to the county attorney. The result was the instant indictment.

The first line of defense was that the State did not generate a jury question on all essential elements of the crime charged. The affirmative portion of the defense was that the hogs were returned to their rightful owners. Defendant contends the hogs were too small for proper breeding when delivered. His father was dissatisfied and called Dwaine Clark. Defendant's wife testified Dwaine Clark and a trucker came and took the hogs away while defendant was working in the fields. She was in the house. Earl Williams, defendant's father, went out and helped load the animals.

Since Dwaine Clark, the manager of the partnership that owned the hogs, died May 1967, shortly after the hogs were delivered and Earl Williams, defendant's father, died July 20, 1968, three weeks before defendant was indicted, the only person active in the contract, and still alive, was defendant. No evidence was produced as to how the partnership kept track of its hogs, what books were kept on financial transactions or what, if any, evidence the partnership papers contained as to whether the hogs in question had or had not been returned. In this regard the sole evidence was by James Clark and Leo Seuferer. Both said to the best of their knowledge no hogs had been returned but they did not know what, if anything, Dwaine Clark might have done

about the hogs in April 1967. Seuferer said he found the contract under which the hogs were delivered in the active files maintained by Dwaine Clark at the time of his death in May 1967. Dr. Graham was an inactive partner and knew nothing about the matter.

There were several other side issues brought out without objection on cross-examination of defendant. On several of these issues the jury could find defendant had been successfully impeached. The State also produced three witnesses who testified that defendant's reputation for truth and veracity in the community was bad. Defendant testified he had previously been convicted of three felonies.

I. Defendant complains of the court's action overruling his motion for a directed verdict. On this issue the evidence and all reasonable inference therefrom are received in the light most favorable to the State. If there is substantial evidence reasonably tending to support the charge the issues should be submitted to the jury and it is necessary to consider only the evidence which tends to support the verdict. State v. Wimbush, 260 Iowa 1262, 150 N.W.2d 653, 654. However, the State must prove all of the essential elements of the crime and any evidence, circumstantial or direct, must be sufficient to raise a fair inference of guilt. It must do more than raise a suspicion, speculation or conjecture. State v. Daves, 259 Iowa 584, 586, 144 N.W.2d 879. These rules apply to proof of each essential element of the crime.

II. Embezzlement was not a crime at common law, 2 Burdick, Law of Crime, § 574, p. 351; 29A C.J.S. Embezzlement § 2, p. 4. In Iowa embezzlement and all other crimes are wholly statutory. State v. Wallace, 259 Iowa 765, 772, 145 N.W.2d 615.

Chapter 710, Code, 1966, deals with embezzlement in several sections which define distinct and separate crimes; i. e., embez-

zlement by public officers, § 710.1; by bailee, § 710.4; by agents, § 710.9; et cetera. These crimes are similar but not subject to identical rules, State v. Cavanaugh, 214 Iowa 457, 460, 236 N.W. 96.

The different crimes of embezzlement covering different situations are noted here because of a rule laid down in State v. Bryan, 40 Iowa 379, 381, 382:

"The crime with which the defendant is charged, is that of converting the money which came into his hands as treasurer to his own use. The rule is too well established to require citation of authorities to verify it, that conversion may be shown either by direct proof of the fact of conversion, or by proof of a demand and refusal. Where the fact of conversion is sought to be proved by evidence of a demand and refusal, it may always be met and neutralized by evidence showing an excuse for this refusal; and when the excuse shown is sufficient, then the evidence of a demand and refusal does not establish the fact of conversion. * * *

"But this doctrine does not apply to the crime of embezzlement as defined by the next section of our statute, (Code, 3909). (Now § 710.5, at that time § 710.3, embezzlement by bailee had not been enacted.) There the doctrine relied upon by appellant's counsel and vindicated by the authorities they cite applies."

█ The State's brief relies on the above rule: "* * * The State showed that appellant signed an agreement to lease certain hogs, the hogs were delivered to appellant and when the lease expired a demand was made on appellant to return the hogs and the hogs were never returned. Obviously the State sustained its burden in proving the elements of the crime in question and the case was properly submitted to the jury." If the rule applies to embezzle-

ment by bailee there is sufficient evidence for a jury case. This rule, under which the State need only show receipt of the property, demand and refusal to redeliver, is peculiar to embezzlement by public officials. State v. Bryan, supra, so states. Reference to section 710.1 relating to public officials will show the wealth of prohibited acts provided in the section and a rational basis for the rule.[2]

█ In cases charging embezzlement by persons other than public officials a different rule applies. Ordinarily, fraudulent conversion to defendant's use must be shown. Cf. Footnote 1. See also, 2 Burdick, Law of Crime, § 575, p. 353: "* * * the accused must have fraudulently converted the property; and under most statutes, there must be an intent to defraud."

We have had little occasion in the past to consider the quantum of proof of conversion required necessary in cases of this kind. In similar cases there has always been proof of some overt act of defendant which is inconsistent with the rights of the true owner of the property; State v. Dykes (Iowa, 1968), 158 N.W.2d 154 (sale of corn at other than designated elevator); State v. Christiansen, 231 Iowa 525, 1 N.W.2d 623 (admitted collection of monies retained by agent and kept by him); State v. Schumacher, 162 Iowa 231, 143 N.W. 1110 (use of company funds to purchase grain options); State v. Boggs, 166 Iowa 452, 147 N.W. 934 (pledge of nonowned contract as security for personal loan); State v. Rowell, 172 Iowa 208, 154 N.W. 488 (commingling and use of funds by agent. The funds belonged to the principal). Other cases to the same effect could be cited. In each case, where conviction has been sustained there has been some evidence, direct or circumstantial, of

2. Perkins on Criminal Law, Second Ed., chapter 4, p. 294, footnote 58, in referring to section 710.1 states:
"E. g., I.C.A. (Iowa) § 710.1. Under the statute referring to embezzlement of public funds, one who uses public funds in his possession or control in any manner or for any purpose not expressly authorized by law, is guilty. * * *."

wrongful conversion. We can find no such evidence here.

The subject, as it relates to demand and refusal, is best covered by Perkins on Criminal Law, Second Ed., chapter 4 (D), p. 293, where he quotes People v. Ward (1901), 134 Cal. 301, 304, 66 P. 372, 373:

"'A demand, followed by a refusal *if the other essential facts exist*, is evidence of embezzlement, and sometimes indispensable evidence of it; *but it is the fraudulent and felonious conversion of the money or other property that constitutes the offense*, and that may often be proved without a demand'" (Emphasis supplied.)

III. Except in the case of public officials our statutes ordinarily require a showing of conversion of the property to the use of the embezzler. This may be done by circumstantial evidence and the State is entitled to all reasonable inferences to be taken from the factual circumstances shown. Here the State relied entirely on circumstantial evidence to prove defendant converted the property to his own use.

*In a civil case* an issue may be proven by circumstantial evidence if it is such as to make the theory of causation reasonably probable, not merely possible, and more probable than any other theory based on such evidence. Rule 344(f) (16), Rules of Civil Procedure. It is not necessary in a civil case that circumstantial evidence be so clear as to exclude every other possible theory. Davidson v. Cooney, 259 Iowa 1278, 147 N.W.2d 819, 822.

*In a criminal case* where circumstantial evidence alone is relied on to prove any one or more of the essential elements of the crime the evidence must be entirely consistent with defendant's guilt and wholly inconsistent with any rational hypothesis of defendant's innocence and so convincing as to exclude a reasonable doubt that defendant was innocent of the offense charged. State v. DeRaad (Iowa, 1969), 164 N.W.2d 108, 110.

We know of no other case with a similar factual situation; i. e., where the accused defendant was one of two joint bailees either of whom could have disposed of the bailed property. There is no direct evidence that either bailee actually did so act. The possible activity of the deceased father is simply not met as an issue in the State's case. This alone is a fatal weakness under the foregoing rule long recognized in this court.

Nor is there any substantial evidence to eliminate the very real possibility that the bailor Dwaine Clark did not come and take the hogs away. The jury's obvious rejection of defendant's contention in this regard is not enough "to exclude a reasonable doubt that defendant was innocent of the charge". The negative factor of rejection of defendant's story does not relieve the State of its affirmative burden to prove its case. Defendant's evidence is to be considered but here it did not add to the weight of the State's case. There was no effort, beyond the finding of the papers with the "active files", to show the partnership still charged defendant and his father with possession of the hogs at the time of Clark's death.

The books of the partnership may or may not have been sufficiently detailed to show the location and number of hogs to which the partnership claimed ownership. If such evidence was available it was not produced. In the absence of such evidence and because of the death of Mr. Clark, the jury was left to speculate as to what the active partner did or did not do between the date of delivery of the hogs and the date of his death. As in the case of the possible activity of defendant's father, this dearth of evidence constitutes a fatal weakness in the State's case.

The rule applicable to public officials as to demand and nondelivery is inapplicable here. The record is completely silent as to what happened to the hogs. The evidence permits rational hypothesis inconsistent with defendant's guilt. As was asked in

State v. Daves, 259 Iowa 584, 591, 144 N. W.2d 879, 884:

"The evidence is circumstantial. Can we say it is sufficient to allow the jury to find every rational hypothesis of innocence has been negatived as required by the cases? State v. Whisler, 231 Iowa 1216, 3 N.W.2d 525, 527; State v. Sigman, 220 Iowa 146, 149, 261 N.W. 538; State v. Bricker, 178 Iowa 297, 306–307, 159 N.W. 873; State v. Vandewater, not reported in Iowa, 176 N. W. 883, 884." As in State v. Daves, supra, the answer must be negative under the record made.

What has been said here makes moot the other points relied upon by defendant. The motion for directed verdict made at the close of all the evidence should have been sustained.

Reversed.

MOORE, C. J., and MASON, RAWLINGS, LeGRAND and UHLENHOPP, JJ., concur.

LARSON, STUART and REES, JJ., dissent.