**STATE of Iowa, Appellee,**

v.

**Darrell E. BIZZETT, Appellant.**

**No. 54955.**

Supreme Court of Iowa.

Nov. 14, 1973.

O'Brien, Galvin & O'Brien, Sioux City, for appellant.

Richard C. Turner, Atty. Gen., Ray Sullins, Asst. Atty. Gen., and Edward F. Samore, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, LeGRAND and UHLENHOPP, JJ.

LeGRAND, Justice.

Defendant was convicted by a Woodbury County jury for the murder of Dr. Robert Stukel, Jr. He appeals from judgment sentencing him to serve a term of life imprisonment in the penitentiary as provided by section 690.1, The Code, 1966. We affirm the trial court.

For the present we give only a brief background of the circumstances leading up to this tragedy, reserving until later a discussion of those facts which are important to a consideration of the errors alleged by defendant.

Dr. Stukel, a veterinarian practicing in nearby Nebraska, came to Sioux City on the evening of August 31, 1970, apparently bent on making a round of the taverns and coincidentally in finding a "party" or "getting a girl." The record shows he was at one or two drinking establishments early in the evening and sometime around midnight found his way to the 711 Club, where the events culminating in his death got underway. There he met defendant who was working as a bartender. The two engaged in conversation from time to time as defendant served him a number of drinks, the number of which remains the subject of some dispute.

When the 711 Club closed at about 2:00 A.M., defendant and Stukel left together. They walked several blocks toward the home of one Gerald Lee, who is described as a bootlegger, intending to buy more whiskey. Apparently defendant was forbidden to take whiskey from his place of employment. On the way toward Lee's house, the two met Debra Eggers and Tom Farmer. Debra and defendant had been acquainted for several years but defendant had not known Farmer previously. The group then continued on toward Lee's house, during which time Debra overheard defendant suggest to Farmer that they "roll this guy."

At Lee's house, defendant went in alone to buy the whiskey. The other three remained outside. Defendant shortly returned with a bottle of whiskey and the four proceeded, at Debra's suggestion, to the playground at Webster school, which was both secluded and close at hand.

Arriving there, they indulged in further drinking. It was here defendant told Debra he would give a signal by snapping his fingers and Farmer should then "knock Stukel out." At defendant's request, Debra passed this bit of information along to Farmer. Within a few moments, defendant gave the prearranged signal, Farmer knocked Stukel to the ground, and the two men—Farmer and defendant—began going through their victim's pockets. When it appeared Stukel was not out, defendant said he would "take care of that." According to Debra, he then jumped and stomped on the doctor's head and face. Almost immediately he began to bleed profusely, the attackers became alarmed, and all fled from the scene.

After leaving the school yard someone —both defendant and Debra take credit for it—called the police to report an injured man lying in the school yard. The police came, found Stukel in a dying condition, and removed him to St. Vincent's Hospital, where he expired within the hour.

Later defendant was arrested and his subsequent trial ended in a conviction as already noted. His appeal raises three issues upon which he claims the trial court committed reversible error. They are:

(1) The trial court erred in overruling his motion for a directed verdict;

(2) The trial court erred in refusing to instruct the jury that Willie Earl Rucker was an accomplice as a matter of law; and

(3) The trial court erred in instructing the jury that an assailant's feet could be so violently used as to constitute a deadly weapon.

I. Defendant's first assignment raises two related matters. First, he says there was no competent evidence that defendant stomped and jumped on Dr. Stukel because Debra Eggers, who gave that testimony, was defendant's accomplice who lacks the statutory corroboration required by section 782.5. In this same connection, he argues there was also a total absence of evidence that such stomping or jumping, if it occurred, was the cause of death.

The issue of corroboration is also raised in defendant's second assignment of error with respect to Willie Earl Rucker, who was present during part of the events already described. We postpone for the moment a discussion of his status and consider first the issue of corroboration exclusive of his testimony. We should mention here, too, that Tom Farmer, prominently mentioned throughout the record as a participant in the attack, was not called as a witness.

Defendant's argument that his conviction lacks evidentiary support is clearly without merit if the testimony of Debra Eggers is corroborated. Her version of the events leading to Dr. Stukel's death is alone enough, if corroborated, to sustain the jury's verdict.

II. Everyone concedes this young lady was an accomplice, and the trial court so instructed the jury as a matter of law. Admitting to her own complicity, she testified to a conversation in which defendant suggested "rolling" the doctor; to a prearranged signal for attacking him; and to the heartless act of jumping and stomping on the doctor's face and head when it appeared the original attack had not done the job.

 Whether there is enough evidence to submit the question of corroboration is originally for the trial court to decide. If so, it should go to the jury under proper instructions for a determination by that body as to its sufficiency. State v. Jennings, 195 N.W.2d 351, 357 (Iowa 1972). We have frequently said corroboration need not be strong nor need it go to every material fact testified to by an accomplice. The statutory requirement is met if it can be fairly said the accomplice is corroborated in some material fact tending to connect the defendant with the commission of the crime. Furthermore, the defendant himself may furnish the required corroboration of accomplice testimony. State v. Williams, 207 N.W.2d 98, 107 (Iowa 1973); State v. Gray, 199 N.W.2d 57, 59 (Iowa 1972); State v. Jennings, supra, 195 N.W.2d at 357; State v. Morrison, 183 N.W.2d 696, 698 (Iowa 1971); State v. Latham, 254 Iowa 513, 515, 117 N.W.2d 840, 842 (1962).

In State v. Williams, this appears at page 107 of 207 N.W.2d:

"The corroboration of an accomplice necessary under section 782.5, The Code, to justify conviction may come from defendant himself in the way of his admissions, declarations, conduct, writings or other documentary evidence."

In that same opinion we also said this:

"The corroboration * * * need be neither strong nor corroborative of every material matter testified to by an accomplice, being sufficient if the evidence adduced legitimately tends to connect the accused with the commission of the crime charged and thereby lends support to the credibility of the accomplice."

■ We believe defendant's doom is sealed by his own testimony. He admits being in Dr. Stukel's company, both at the 711 Club and while going for the bootleg whiskey, for several hours before his death, except for a few minutes during which he argues the crime was planned and committed. Defendant manages this version by saying he left Debra Eggers, Tom Farmer and Stukel standing outside Lee's house while he went in to make the whiskey purchase. When he came out, he says, they were gone and he then went his separate way. A few minutes later, while walking near Webster school, by strange coincidence he again met up with Debra Eggers, who was running away from the school yard crying, "He's down, he's down." Although professing that he did not understand what this referred to, defendant says he nevertheless went into the school yard to investigate and there found Dr. Stukel lying in a pool of blood. He says he tried unsuccessfully to help the injured man, then panicked and left the scene.

It is interesting that defendant agrees with Debra Eggers he was with Dr. Stukel a few minutes before and a few minutes after the attack. He excused himself only while it was taking place.

Defendant's testimony furnishes sufficient corroboration for Debra Eggers' story that, not only was he one of those engaged in the fatal beating, but was also its prime mover.

There is also additional corroboration for her story on one important point dealing with defendant's claim that Debra, Tom Farmer, and Dr. Stukel had already left when he finished his liquor purchase from Lee. Lee contradicts this by saying he watched from his window as defendant left, saw him join the group at the corner and observed them as they walked away together.

Holding as we do that Debra Eggers' testimony is sufficiently corroborated, it inevitably follows that there is sufficient evidence that defendant stomped and jumped on the prostrate form of Dr. Stukel, thereby inflicting grievous injuries upon his head and face.

■ However, defendant further claims there is no evidence from which the jury could find this act was the cause of death. We accept defendant's premise that the state was obliged to prove death resulted from the jumping and stomping, although he would of course also be responsible for the blow delivered by Tom Farmer. Be that as it may, we find no basis for defendant's argument. Three medical doctors testified Dr. Stukel died as the result of a basal skull fracture caused by the application of severe and unnatural external force. This caused hemorrhaging due to laceration of the arteries at the base of the brain. According to the doctors, the "severe and unnatural external force" could have been a blow or a fall. We have no doubt the jury was justified in finding the action of defendant in jumping or stomping upon Dr. Stukel while he lay helpless on the ground was the force which caused death. This is borne out by the fact it was only after this bit of violence that Stukel became unconscious and began to bleed profusely from the mouth and ears.

■ In considering objections based on insufficiency of evidence, we view the record in the light most favorable to the state and accept as established all reasonable inferences tending to support the action of the jury. In doing so we need consider only the supporting evidence, whether contradicted or not. State v. Bruno, 204 N.W.2d 879, 884 (Iowa 1973). Applying these standards here, we have no hesitancy in saying defendant's motion for a directed verdict was properly overruled.

■ III. We come now to defendant's complaint the trial court erred in refusing to instruct the jury that the witness Willie Rucker was an accomplice as a matter of law. Instead, the court instructed the jury to consider Rucker's conduct and determine if he was an accomplice. In the event they

found he was, the trial court properly instructed on the necessity for corroboration.

Perhaps it would be unnecessary to consider this assignment since we have already found corroboration for Debra Eggers' testimony. However, we believe the trial court was correct in holding that Rucker was not an accomplice as a matter of law. He was at the tavern during Stukel's presence there and heard the conversation between Stukel and defendant. He also exchanged some small talk with the doctor himself. Later he saw Stukel and defendant leave the tavern together. From that point on, he and a friend, who did not testify, followed defendant and Dr. Stukel until they, along with Debra Eggers and Tom Farmer, reached the school yard. At that point, Rucker and his companion hid in the alley behind some bushes and observed the events which there took place. They saw the group exchange a few drinks, saw Farmer strike Stukel, and saw Farmer and defendant start to rifle Stukel's pockets. At this point, they ran from their vantage point to the scene of the crime, apparently intending to share in any money found on the victim. It was then defendant jumped and stomped on Stukel's head. When he began to bleed profusely, Rucker became alarmed and hurriedly left.

There is a total absence of evidence connecting Rucker with any of the events until he and his companion tried to take advantage of the opportunity offered by the attack on Dr. Stukel. No one suggests Rucker was a party to the preliminary planning. Perhaps Rucker and his companion were stalking the others awaiting just the chance which was eventually presented. However, this would not make Rucker an accomplice. Defendant did not even know of his presence until he burst upon the scene. Defendant received no aid, assistance, or encouragement from Rucker. In fact Rucker's conduct was in direct conflict with that of defendant. He was trying to deprive defendant of the fruits of his crime.

We need decide here only whether defendant was entitled to an instruction that Rucker was an accomplice as a matter of law. We say he was not.

IV. Defendant also asserts error in instruction number 14 dealing with defendant's alleged assault upon Dr. Stukel. The instruction is set out here in its entirety:

"In determining whether an assault, if one occurred, was made with a deadly weapon, you may and should consider whether the instrumentality used in making the assault was used in such a manner and with such force that the natural and probable result of such use would likely produce death. The feet of an assailant, if so violently used could be found by you to be a deadly weapon."

■ We doubt defendant's present complaint is the same as the objection urged when the instruction was given. In any event, we find no error. One's feet, when used to jump and stomp on a helpless person, may indeed be considered a deadly weapon. State v. Heinz, 223 Iowa 1241, 1259, 275 N.W. 10, 21 (1938); cf. State v. Sayles, 173 Iowa 374, 381, 382, 155 N.W. 837, 839 (1916).

Defendant's further objection that the instruction unfairly told the jury defendant *was* an assailant is also without merit. The instruction was clearly made applicable only if the jury first found an assault had in fact been made.

V. Since we find no reversible error in any of the issues raised by defendant, the judgment is affirmed.

Affirmed.