STATE of Iowa, Appellee,

v.

Richard Dale KENNEDY, Appellant.

No. 56458.

Supreme Court of Iowa.

Dec. 18, 1974.

David A. Elderkin, Cedar Rapids, for appellant.

Richard C. Turner, Atty. Gen., Jim P. Robbins, Asst. Atty. Gen., and William G. Faches, Linn County Atty., for appellee.

Heard before MOORE, C. J., and MASON, UHLENHOPP, REYNOLDSON, and McCORMICK, JJ.

UHLENHOPP, Justice.

This appeal involves problems which arose during trial of a charge of tampering with a motor-vehicle odometer, an indictable misdemeanor under § 321.71(2) and (16), Code 1973:

2. No person shall knowingly tamper with, adjust, alter, change, set back, disconnect or fail to connect the odometer of any motor vehicle, or cause any of the foregoing to occur to an odometer of a motor vehicle, so as to reflect a lower mileage than the true mileage driven by the motor vehicle.

16. Any person who violates the provisions of this section shall be punished by a fine of not less than four hundred dollars and not more than one thousand dollars or by imprisonment in the county jail for a period not to exceed ninety days, or punished by both such fine and imprisonment.

Under § 321.71(8), since revised, the transferor of a motor vehicle must provide the transferee with a signed certification of the odometer reading. The transferee's new title certificate shows that mileage.

The parties waived a jury. Code 1973, § 780.23. The trial court could find the following from the evidence. Continental Oil Company, through its office in Cedar Rapids, Iowa, owned a Plymouth station wagon which was registered in Linn County, Iowa, and was driven by Continental's employee, James A. Martin. In July 1972, Continental traded the car to First Avenue Plymouth in Cedar Rapids. At that time, according to Martin, the car had been driven nearly 100,-000 miles. First Avenue Plymouth transferred the car to Cedar Valley Motors of Cedar Rapids, which sold the car to defendant Richard Dale Kennedy of Cedar Rapids and certified that the true mileage on the car was unknown but that the odometer read 99,123.8 miles. Defendant paid $1000 for the car according to his signed application for a title certificate. Some of the testimony indicates that the transaction between Cedar Valley and defendant occurred in July 1972; Cedar Valley's odometer certification was dated July 31, 1972; but defendant's title certificate was dated August 24, 1972. Defendant's title certificate recited, "Mileage UNK."

About September 6, 1972, defendant sold the car for $1800 to John T. Marshall, a plant employee in Cedar Rapids. In connection with that sale, defendant certified that the true mileage on the car was 51,547 miles. But for reasons of his own, defendant did not certify the odometer reading. However, the odometer in fact read about 51,500 miles, which defendant orally assured Marshall was correct. Copies of the two odometer certifications are appended. Marshall's title certificate recited, "Mileage 51547," and stated that the car was encumbered to Marshall's credit union.

ODOMETER CERTIFICATION
To be completed by seller

Required on all 1969 and subsequent year motor vehicles
DESCRIPTION OF MOTOR VEHICLE:
Make _Plymouth_ Year _1969_
V.I.N. (Serial No.) _PL 45 H9D-30-7286_
Plate No. _~~57-4913~~ 57-4913_ Year _1972_
Name of Transferor:
_Cedar Vally motor S.._
I hereby certify that to my best knowledge and belief the mileage as shown on the odometer and the true mileage traveled by the above described vehicle on the date of transfer thereof are as follows:

TRUE MILEAGE _Unknown_
— ODOMETER MILEAGE _91,238_
_July 31 - 72_      _Cedar Vally motor_
Date      Signature of Transferor

ODOMETER CERTIFICATION
To be completed by seller

Required on all 1969 and subsequent year motor vehicles
DESCRIPTION OF MOTOR VEHICLE:
Make _Plymouth_ Year _6 9_
V.I.N. (Serial No.) _P L 45 H 9 D 307286_
Plate No. _57-4913_ Year _72_
Name of Transferor:
_Kennedy Richard Dale_
I hereby certify that to my best knowledge and belief the mileage as shown on the odometer and the true mileage traveled by the above described vehicle on the date of transfer thereof are as follows:

TRUE MILEAGE _51547_
ODOMETER MILEAGE
_9 - 72_      _Richard D. Kennedy_
Date      Signature of Transferor

The Linn County attorney charged defendant with tampering with an odometer. At trial the State introduced evidence of the matters we have related, including copies of the significant documents: the title certificates and odometer certifications kept in the Linn County treasurer's office. Defendant objected to the introduction of those documents but the trial court overruled the objections. Defendant did not introduce any evidence.

At the conclusion of the evidence, defendant moved for dismissal of the charge. The trial court overruled the motion.

The trial court found defendant guilty and sentenced him. Defendant appealed.

In this court defendant urges that the trial court erred in overruling (1) his objections to the documents and (2) his motion to dismiss.

I. *Rulings on Evidence.* The duplicates of the title certificates and odometer certi-

fications were identified by the county treasurer as a witness at the trial. The documents purported to relate to the car in question and to Richard Dale Kennedy, but defendant objected to them on two grounds: insufficient foundation and hearsay.

■ An objection of insufficient foundation is not sufficiently specific. State v. Buckner, 214 N.W.2d 164 (Iowa); State v. Buchanan, 207 N.W.2d 784 (Iowa). We have examined the transcript, however, and have found that defendant did apprise the trial court of the reason he thought the foundation insufficient: the State had not shown the "Richard Dale Kennedy" named in the documents was the same individual as defendant. Assuming arguendo that this objection was good when made, the State connected up the documents by showing by the witness Marshall that defendant was the individual involved in the transactions involving this vehicle. See McCormick, Evidence, § 58 at 134 (2d ed.) (connecting up by showing missing fact); 53 Am.Jur. Trial § 116 at 103 (discretion of court as to order of evidence). Hence no error appears at this juncture.

■ As to the hearsay objection, we must consider (a) the title certificates and (b) the odometer certifications. By offering the title certificates, the State was trying to prove that from approximately July to early September, 1972, defendant owned the car. Under our statutes, ordinarily no person can acquire ownership of a car "except by virtue of a certificate of title issued or assigned to him for such vehicle or by virtue of a manufacturer's or importer's certificate delivered to him for such vehicle;" and "no court in any case at law or equity shall recognize the right, title, claim or interest of any person in or to any vehicle subject to registration sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title or manufacturer's or importer's certificate duly issued or assigned in accordance with the provisions of this chapter [321]." Code 1973, § 321.45(2) and (2)(d). Thus the title certifi-

cate itself constitutes the evidence of title. Farmers Butter & Dairy Coop. v. Farm Bureau Mut. Ins. Co., 196 N.W.2d 533 (Iowa); State Farm Mutual Automobile Ins. Co. v. Wyant, 191 N.W.2d 689 (Iowa); Stam v. Cannon, 176 N.W.2d 794 (Iowa). In offering the title certificates here, the State was endeavoring to prove the certificates themselves. Hence the certificates were not hearsay. State v. Ostrand, 219 N.W.2d 509 (Iowa); 31A C.J.S. Evidence § 260 at 680; 29 Am.Jur.2d Evidence § 859 at 960.

But the odometer certifications are different. The State was trying to prove that the mileage was about 99,000 when defendant bought the car and about 51,500 a short time later when he sold it. The State offered the two odometer certifications to prove those mileages. Since the odometer certifications were offered to prove the truth of the mileages stated in them, they were hearsay. State v. Miller, 204 N.W.2d 834 (Iowa). Were they within an exception to the hearsay rule?

■ Defendant's own odometer certification was an admission and therefore within the exception for a party's own statements. 29 Am.Jur.2d Evidence § 600 at 655; 31A C.J.S. Evidence § 272 at 696. Cedar Valley Motors' odometer certification to defendant was admissible as an admission regarding the car by defendant's predecessor in title. We recognize the doctrine of admissions by privies in title, espoused in IV Wigmore, Evidence, § 1080 at 134–139 (3d ed.). See Egan v. Egan, 212 N.W.2d 461 (Iowa). The doctrine applies to personal property as well as realty. 29 Am.Jur.2d Evidence § 673 at 727; 31A C.J.S. Evidence § 324 at 819, § 329 at 825; Wigmore, supra, § 1083 at 155. It includes admissions "in regard to any matter concerning the physical condition or use of the property . . . ." Phillips v. Laughlin, 99 Me. 26, 35, 58 A. 64, 67. See also Liberty National Bank & Trust Co. v. Merchant's & Manufacturer's Paint Co., 307 Ky. 184, 209 S.W.2d 828; 29 Am.Jur.2d Evidence § 672 at 725–726. Thus the trial court properly

overruled defendant's evidentiary objections.

II. *Motion to Dismiss.* We do not try the case anew. Rather, we decide whether the evidence generated a fact issue for the fact finder, which in this case was the trial court.

■ The question, of course, is not whether defendant could be convicted of some other offense on the evidence presented, but whether he could be convicted of this offense. Basically, defendant asserts two grounds for his motion to dismiss: insufficiency of the evidence to generate a fact issue on (a) knowing commission by defendant of the alleged offense and (b) venue. In passing on the sufficiency of the evidence, "we view the record in the light most favorable to the state and accept as established all reasonable inferences tending to support the action of the jury. In doing so we need consider only the supporting evidence, whether contradicted or not." State v. Bizzett, 212 N.W.2d 466, 469 (Iowa). See also State v. Graham, 221 N.W.2d 258 (Iowa). A fact may be inferred from circumstantial evidence, which indeed may be powerful proof. Where circumstantial evidence alone is relied on to establish guilt, "the circumstances must be entirely consistent with defendant's guilt, wholly inconsistent with any rational hypothesis of his innocence, and so convincing as to exclude any reasonable doubt that defendant was guilty of the offense charged. Like direct evidence it must raise a fair inference of guilt, generate something more than suspicion, speculation or conjecture." State v. Reeves, 209 N.W.2d 18, 21 (Iowa).

■ (a) On the question of whether the jury could reasonably find defendant knowingly changed the odometer mileage, the parties cite cases on moving and parking violations in which the only proof introduced, in addition to evidence of the violation itself, was that the defendant owned the car. Some of these cases hold that such evidence is insufficient, since someone other than defendant may have had possession of the car when the offense occurred. E. g. People v. Forbath, 5 Cal.App.2d Supp. 767, 42 P.2d 108 (parking); People v. Hildebrandt, 308 N.Y. 397, 126 N.E.2d 377 (speeding). But see City of Portland v. Kirk, 518 P.2d 665 (Or.App.) (ordinance made owner prima facie responsible for parking violation); People v. Rubin, 284 N.Y. 392, 31 N.E.2d 501 (parking).

These cases do not appear to be in point. A car may well have been driven by someone other than the owner when speeding or illegal parking occurred, but the owner himself is likely to be the one who changed his odometer or had it changed—or so a jury could reasonably find. A case of that kind is State v. Anonymous, 6 Conn.Cir. 462, 275 A.2d 825, 826. There the odometer showed 76,000 miles when the defendant acquired the car in June. In August it showed 38,000 miles. On October 1 a law became effective making odometer tampering an offense. On December 19, when the defendant still owned the car, the odometer showed 39,000 miles. The court held that the fact finder could reasonably infer the defendant "turned back the odometer from 76,000 miles to 38,000 miles between June and August," but held substantial evidence did not appear the defendant turned back the odometer after October 1 when the law against tampering went into effect.

In the present case the Iowa tampering law was in effect during the entire period of defendant's ownership of the car. The evidence shows that in July or August the odometer mileage was about 99,000 and that in early September it was about 51,500. As in the Connecticut case, the fact finder could reasonably infer that defendant changed the mileage or caused it to be changed; and if the fact finder inferred that defendant did so, it could infer he must have known what he was doing.

This case however contains corroborative evidence not present in the Connecticut case, bearing on both knowledge and tampering. On July 31, 1972, Cedar Valley certified to defendant that the odometer

mileage was 99,123.8 and the true mileage was "unknown." In September following, defendant represented to Marshall orally and by written certification that the "true" mileage was approximately 51,500. How could defendant so represent in the face of Cedar Valley's certification to him? The trial court could find that defendant's representations were bald lies. Here was guilty knowledge.

Moreover, the trial court could find that defendant was in a position requiring him to change the odometer to match the lies. Defendant could not represent to Marshall that the true mileage was about 51,500 but deliver a car with about 99,000 showing on the odometer. The evidence generated a fact question on whether defendant committed the offense charged.

The trial court could certainly find that the odometer mileage changed during the period defendant had the car. Defendant contends that other inferences are just as reasonable as the inference that *defendant* changed the odometer mileage or had it changed. He argues that the change may have resulted from mechanical failure. But this does not square with what he told Marshall. He assured Marshall that the odometer mileage was the actual mileage on the car. But if the odometer mileage was incorrect because of mechanical failure, then the odometer mileage would not be the actual mileage. Marshall testified, "I asked if this was the original mileage; my reason for doing so was I believed that even the 51,000 that the car had on it at the time was a little high for a two-year old car; and Mr. Kennedy did say *this was the actual mileage on the car.*" (Italics added.) A contention that defendant may have honestly thought that this was the actual mileage on the car is belied by Cedar Valley's certification to defendant that the true mileage was unknown and that the odometer mileage was 99,123.8.

Defendant also argues that the inference is reasonable the car was actually driven from 99,000 around to 51,500 during the time he had it. Again the trial court could find the inference to be unreasonable, for two reasons. First, Cedar Valley certified the mileage on July 31, 1972. Marshall bought the car on September 6, 1972, some 37 days later. The trial court could find the inference unreasonable that the car was driven 52,500 miles in those 37 days or an average of about 1418 miles per day. Second, again we have an inconsistency with what defendant said to Marshall. Under the inference defendant urges, the *actual* mileage on the car would be 151,500, not what defendant assured Marshall. The trial court could reject the alternative inferences defendant urges.

We do not find merit in the first ground of defendant's motion to dismiss.

██ (b) As to venue, all the parties involved with this car were located in Linn County, including defendant himself during his ownership of the car. The car was titled there and the transactions with respect to it occurred in that county.

The jury could reasonably infer that the tampering offense occurred in Linn County. State v. Tilley, 176 N.W.2d 843 (Iowa). That case involved forgery, another offense which is ordinarily committed in secret, and this court held the proof of venue sufficient without direct evidence. The forged check was written on a bank located in the county of the forum, the apparent drawer did business at that bank, and the payee resided in that county. This court relied on and quoted from United States v. Britton, 24 F.Cas. pp. 1239, 1241 (No. 14,650). Justice Story there stated:

> If a forged instrument is found or uttered in one place, and there is no evidence to show, that it was forged elsewhere, what ground is there to presume, that it was not forged, where it was found, or uttered? If its existence in a forged state is not proved in any other place, it must, from the necessity of the case, be presumed to have been forged, where its existence in such state is first made known. . . . If the law were

otherwise, it would be almost impossible to convict any person of forgery, for such acts are done in retirement and concealment, far from the sight of all persons but confederates in guilt.

This language is equally appropriate to the offense of tampering. The evidence was sufficient to generate a fact question on venue.

No error appears.

Affirmed.

All Justices concur except REYNOLDSON, J., who dissents.

REYNOLDSON, Justice (dissenting).

The 1971 legislation relating to odometers pertinently provides:

"321.71 *Odometer requirements.*

    \*     \*     \*     \*     \*     \*

"(2) No person shall knowingly tamper with, adjust, alter, change, set back, disconnect or fail to connect the odometer of any motor vehicle, or cause any of the foregoing to occur to an odometer of a motor vehicle, so as to reflect a lower mileage than the true mileage driven by the motor vehicle.

    \*     \*     \*     \*     \*     \*

"(8) \* \* \* the transferor of any motor vehicle \* \* \* shall provide to the buyer a statement signed by the transferor which shall set forth the mileage on the odometer at the time of transfer and which shall state that to the transferor's best knowledge the belief it is the true mileage. If the transferor has knowledge that the mileage shown on the odometer is not the true mileage traveled by the motor vehicle, he shall so indicate on the statement and he shall state the true mileage to his best knowledge and belief. \* \* \*

    \*     \*     \*     \*     \*     \*

"(16) Any person who violates the provisions of this section shall be punished by a fine of not less than four hundred dollars and not more than one thousand dollars or by imprisonment in the county jail for a period not to exceed ninety days, or punished by both such fine and imprisonment."

The legislative plan obviously was designed to punish an owner who in transferring the vehicle falsified the required odometer statement where evidence of odometer tampering was non-existent. But for some inexplicable reason the State chose to ignore the offense on which it had overwhelming proof [§ 321.71(8)] to pursue a charge [§ 321.71(2)] for which there was not even proof of the *corpus delicti.*

I. This conviction must be reviewed with certain fundamental principles in mind.

Criminal statutes are strictly construed against the State, and the State has the burden of proving every element essential to constitute the crime charged. State v. Hansen, 244 Iowa 145, 147, 55 N.W.2d 923, 924 (1952); see State v. Banks, 213 N.W.2d 483, 485 (Iowa 1973).

The Due Process Clause protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368, 375 (1970); State v. Vietor, 208 N.W.2d 894, 897 (Iowa 1973). Proof of an essential element of a charged crime may not be shifted to an accused. Stump v. Bennett, 398 F.2d 111 (8 Cir. 1968); cert. denied, 393 U.S. 1001, 89 S.Ct. 483, 21 L.Ed.2d 466 (1968); State v. Vietor, supra.

Basic to our criminal jurisprudence is the concept a conviction will stand only where the *corpus delicti* has been established— that the particular crime has actually been committed by someone. See Furgison v. State, 217 N.W.2d 613, 616 (Iowa 1974); State v. Dunn, 199 N.W.2d 104, 108–109 (Iowa 1972); State v. Cristani, 192 Iowa 615, 616–617, 185 N.W. 111, 112 (1921); State v. Millmeier, 102 Iowa 692, 698, 72 N.W. 275, 277 (1897).

Finally, in a criminal case where circumstantial evidence alone is relied on to prove any one or more of the essential elements of the crime the evidence must be entirely consistent with defendant's guilt and wholly inconsistent with any rational hypothesis of defendant's innocence and so convincing as to exclude a reasonable doubt that defendant was innocent of the offense charged. State v. Jellema, 206 N.W.2d 679, 681 (Iowa 1973); State v. Williams, 179 N.W.2d 756, 760 (Iowa 1970); State v. De-Raad, 164 N.W.2d 108, 110 (Iowa 1969).

II. Turning to the situation *sub judice,* it is apparent the State never established the *corpus delicti*: it never proved *anyone* knowingly (or even unknowingly) tampered with or changed the odometer on defendant's vehicle. Assuming as a fact the odometer had a lower reading when defendant sold the vehicle than it had when he acquired it—a condition not entirely clear from the record—there is nothing to show this was not the result of a defect or malfunction or that the intervention of a person was necessary to produce a lower reading. There is total void in the evidence concerning this odometer, although the vehicle was apparently easily available as the State produced the then owner at trial.

I find no authority for taking judicial notice of the mechanical complexities of an odometer, nor does the State, below or here, request judicial notice to be taken.

The difficulty of sustaining the State's position is apparent from its argument "no evidence appears in the record that would suggest a defect or malfunction occurred. Thus it must be inferred that such defect or malfunction did not occur." Appellee's brief, p. 11. This attempt to impose on defendant the burden to negate existence of the *corpus delicti* demonstrates the essential weakness of the State's cause.

III. The majority opinion necessarily infers only a person could change the odometer, no defect or malfunction occurred, and because defendant was the vehicle owner he committed the offense. In an effort to bolster these dubious inferences the majority creates another inference unsupported by the evidence—that defendant made the alleged mileage misrepresentations to the buyer while the odometer stood at the higher reading, thus motivating defendant to then tamper with it. This resting of inference on inference is not only impermissible, State v. Leib, 198 Iowa 1315, 1322, 201 N.W. 29, 32 (1924), it attempts to create an unwarranted presumption arising out of vehicle ownership and endow it with more weight than the presumption of innocence. See State v. Priebe, 198 Iowa 609, 610, 199 N.W. 276, 277 (1924).

It is true the legislature infrequently creates permissible inferences applicable when certain facts are established, but these are subject to careful judicial scrutiny in light of guarantees of due process, trial by jury, the constitutional protection against being compelled to testify, the presumption of innocence, and the requirement of proof beyond a reasonable doubt. State v. Hansen, 203 N.W.2d 216 (Iowa 1972). Here the legislature made no attempt to create any inference. It avoided the problem the majority embraces by creating a separate offense tailored to meet the lack of any evidence the odometer was tampered with or manually changed.

I respectfully submit we should elect to exercise the legislature's restraint, rather than rely on an unsupported dictum from an intermediate court in another jurisdiction to impliedly create inferences which test the parameters of historic constitutional safeguards.

I would reverse.